## LUCAS *v.* LUCAS.

No. 39237 December 13, 1954 76 So. 2d 261

*Hannah, Simrall & Aultman,* Hattiesburg, for appellant.

*Ben Stevens,* Hattiesburg, for appellee.

McGehee, C. J.

On June 18, 1949, the appellant, Willie Lucas, filed his bill of complaint against the appellee, Clarence M. Lucas, in order to have determined and established the true and correct land line running north and south between his land and that of the defendant, according to the government survey of the said line. The bill of com-

plaint alleges that the defendant had, for a period of approximately five or six years prior to the bringing of this suit, maintained a fence which he had built so as to enclose as a part of the lands claimed by the defendant a narrow strip on the east side of the complainant's land, which covered an area of about six acres thereof. The relief sought by the bill of complaint was to have the claim of the defendant fully cancelled as a cloud upon the title of the complainant as to the strip of land in question, and that the court establish the true dividing line between the properties of the respective parties; also that the defendant be required to account for the rents and profits from the strip of land during the period of time that the defendant had held possession thereof.

The answer of the defendant denied the allegations of the bill of complaint, alleged that the fence was on the true line and denied that the complainant was entitled to any of the relief prayed for. The answer did not set up a plea of adverse possession on the part of the defendant to the strip of land in question, and the defendant filed no cross bill asking for affirmative relief in the premises.

The trial court appointed, by consent of the parties, one Forrest Simmons, as a disinterested civil engineer, to make a survey so as to establish the true and correct line running north and south between the lands of the complainant and the defendant. This surveyor, on August 2, 1950, filed his report in court with a map or plat attached thereto, showing that Section 5, Township 5, Range 16 West, in Lamar County, in which the lands of the respective parties are located, in an irregular section in that the same is wider at the north side than at the south side thereof; that the surveyor had located what he considered to be the southeast corner and had surveyed west to a point that he considered to be the proper point to begin a line running north for a survey of the true line, dividing the lands of the complainant and the defendant, according to the field notes of the gov-

ernment survey. The line running north, according to this survey, would disclose that the fence built by the defendant on what he contends to be the correct dividing line, would in fact include approximately six acres of the land claimed by the complainant.

Objections were filed by the defendant to the report of this surveyor, and a hearing was had wherein the testimony on behalf of the complainant clearly supported the correctness of the survey as to the true line to be established according to the field notes. The testimony on behalf of the defendant as to the incorrectness of this survey was that given by one surveyor in contradiction of that of other surveyors who had testified for the complainant. Before the rendition of a final decree in the case, the court directed surveyor Simmons to go back and reestablish the southeast corner with reference to other proven government corners. This surveyor made his second report to the court, to which objections were likewise filed.

Finally, the court appointed one R. L. Morrison, a civil engineer, to survey the line. This surveyor reported to the court that he "began at a point on the northwest corner of Section 5 * * * which point was assumed to be approximately correct * * *." His conclusion was: " * * * There is no way to reconcile the property line in the south part of the section by coming from points along the north end of the section; and by the same token, there is no way to reconcile lines in the north part of the section by using any of the four corners at the southeast corner of the section. It is apparent that earlier surveys made in this section used the southeast corner to lay out property in the southern end of the section and points or corners along the north section lines were used to lay out property in the northern part of the section; consequently, in the central part of the section, one would get one result by using the southeast corner and an entirely different re-

sult by using any of the corners found along the northern part of the section.''

In other words, he reported to the court that he was unable to establish the correct dividing line between the property of the complainant and the defendant. Thereupon the court entered a decree which undertook to establish as the correct location of the line the fence built by the defendant, and which, according to the testimony in behalf of the complainant, would take away from the complainant about six acres of his land. The effect of this decree is to award to the defendant the six acres of land in controversy, in the absence of a plea of adverse possession, and in the absence of a cross bill by the defendant seeking such affirmative relief. In other words, the defendant could not have obtained more relief than the decree affords him if he had interposed a plea of adverse possession and had filed a cross bill asking that his claim of title to the strip of land be quieted and confirmed.

The only evidence of substantial value in support of the contention of the defendant that the fence was located on the true line is that of surveyor Polk, but his testimony is in conflict with the weight of such overwhelming testimony of other surveyors to the contrary that we must assume that the decree in favor of the defendant was not based on his testimony in the absence of a finding of fact to that effect, since the record seems to disclose that the decree in favor of the defendant was based upon the theory that it was impossible to locate the true line, and that to establish any other line than the fence would be ''more dangerous to them than both their farms are worth, because peace and happiness in a family is worth more than the land.'' The chancellor observed that these two brothers ''kid themselves if they think violence will help, and if they get the idea of violence they are fixing to punish innocent people.'' The chancellor further observed that ''your feelings are very high in this case, but I think it better to take a little

longer." It seems that this commendable desire on the part of the chancellor to prevent violence between these two brothers was in part responsible for the appointment of the second surveyor, who reported in effect that it was impossible to determine whether or not the fence was located on the true dividing line according to the government survey.

 However, we are of the opinion that it was error to render the final decree appealed from and that the cause should be reversed and remanded without prejudice to the right of either party to prove the location of the true dividing line between their lands. The complainant is entitled to have such line established in the absence of a plea and proof of adverse possession on the part of the defendant, if the line can be located.

Reversed and remanded.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.