## PHARES, et al. *v.* FARRAR, et al.

No. 39666          June 13, 1955          80 So. 2d 808

738

*Clay B. Tucker,* Woodville, for appellants.

*Brandon, Brandon, Hornsby & Handy,* Natchez; *Maxwell Bramlette,* Woodville, for appellees.

742

APPELLANTS IN REPLY.

McGEHEE, C. J.

On December 19, 1952, the appellant Hayden L. Phares filed his bill of complaint against the appellee John F. P. Farrar, asking the Chancery Court of Wilkinson County to appoint a competent surveyor to determine and locate the true section line between all of Section 15, Township 1, Range 2 West, lying East of the center line of Mississippi-U.S. Highway No. 61 in said county owned by the complainant, and all that part of Section 14 of said township and range lying East of the center line of the Old Sligo Public Road as it existed February 26, 1913, owned by the defendant John F. P. Farrar, and that upon a final hearing that the line surveyed and determined by the surveyor appointed by the court be decreed to be the true boundary line between the tracts of land above described. The Old Sligo Road as it existed on February 26, 1913, is a very short distance west of Mississippi-U.S. Highway 61, and the section line sought to be established by the complainant is that between Sections 14 and 15 lying east of the center line of Miss.-U.S. Highway 61. The proof fails to disclose the location of the true section line in question, according to any proven survey made according to the Government field notes with an established Government corner as the point of beginning.

It later developed that John B. Ferguson, Sr., vendor of the defendant John F. B. Farrar, when conveying that portion of Section 14 above described, among other lands, on July 10, 1951, had reserved unto himself an undivided one-half of all the oil, gas and other minerals thereon; and that the vendors of the complainant Hayden

L. Phares, when conveying to him on August 4, 1951, that portion of Section 15 above described, had likewise reserved one-half of the oil, gas and other minerals thereon. It therefore became necessary that the grantor of the defendant, as well as the grantors of the complainant, should be brought in as parties to the bill of complaint, and which was accordingly done, since their mineral rights respectively would be affected by the survey and location of the true section line in lieu of an alleged agreed line contended for by the defendant Farrar under a parol agreement alleged to have been made by John B. Ferguson, Sr. and H. B. Cunningham, a predecessor in title of the complainant Phares, who died on November 3, 1938.

It was alleged in the bill of complaint and admitted in the answers that there was an old fence extending east from the said Highway 61 across the northern portion of the complainant's land, but which was located south of where the true section line lay be between said Sections 14 and 15, and also south of what the defendants alleged in their answers was an agreed line between the predecessors in title of the original complaint and the original defendant.

The defense to the alleged right of the complainant Phares to have a competent surveyor appointed to locate the true section line between the tracts of land here involved is predicated primarily on the testimony of John B. Ferguson, Sr., who testified, over the objection of the said complainant, that he, the witness, as predecessor in title of the defendant Farrar, and H. B. Cunningham, the former owner of the land now owned by said complainant, had entered into a parol agreement that a line which had been surveyed in 1922 or 1923 by W. W. Dixon, a competent surveyor, should be recognized as the line separating the portions of Sections 14 and 15 involved in this suit, and that the said line should be established by the court as the dividing line without regard to whether or not it was the true section line between the

portions of the said Sections 14 and 15 lying east of the said public Highway 61. Neither the defendant Farrar in his answer to the original bill, nor the defendants Farrar and Ferguson in their separate answers to the amended bill, choose to interpose a cross bill so as to ask for any affirmative relief.

The objection to the competency of John B. Ferguson, Sr. to testify in regard to the alleged parol agreement between him and H. B. Cunningham was based on Section 1690, Code of 1942, which renders a witness incompetent to testify ''to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has has transferred since the death of such decedent.'' However, H. B. Cunningham, who died on November 3, 1938, as aforesaid, conveyed to the Cunningham Company on July 21, 1926, all of the land owned by him in the said Section 15 without any reservation. And on March 15, 1930, the Cunningham Company, a corporation, conveyed that portion of Section 15 lying east of the said Highway 61 to M. E. Cunningham, and without reservation. Then, on October 10, 1938, M. E. Cunningham, as an individual, conveyed the north one-third of this tract of land to R. H. Cunningham, and on the same day conveyed the middle one-third of the said tract of land to Leola Knox, and on the same day conveyed the south one-third thereof to A. B. Cunningham. Each of these three conveyances contained the following reservation:

''There is expected and reserved for and during the life of H. B. Cunningham all of the oil, gas and other minerals in and under said land with the right to lease or mine for same, together with the right to execute a good, valid and binding oil, gas or mineral lease which lease shall run with the land and shall not terminate with the death of said H. B. Cunningham, but shall continue in force as long as the rentals or payments under said lease are made according to the tenor thereof.''

This land in Section 15 and a one-half undivided interest in the oil, gas and other minerals thereon passed by mesne conveyances to the complainant Phares, he having acquired his title thereto on August 4, 1951.

Thus it will be seen that H. B. Cunningham had long prior to his death on November 3, 1938, parted with all his right, title and interest in the land here involved without reservation to the Cunningham Company, and that the said company, a corporation, had conveyed the same without reservation to M. E. Cunningham; that therefore the estate of H. B. Cunningham, deceased, owned no interest in either the land or minerals at the time of his death, and that hence John B. Ferguson, Sr. was not testifying to establish his own claim or defense *against the estate of a deceased person* when he testified in regard to the alleged parol agreement as to the alleged agreed line established between him and H. B. Cunningham, following the survey made by W. W. Dixon during the year 1922 or 1923. The witness was not present when the survey was made but relied on the alleged agreement between himself and the said H. B. Cunningham in regard to the surveyed line made by Dixon, being an agreed line dividing the portions of Sections 14 and 15 lying east of the said Highway 61. The witness frankly admitted that the old fence built by H. B. Cunningham across the northern portion of Section 15 lying east of the said highway was not on the line and that he, as predecessor in title of defendant Farrar, had never claimed any land between the old fence and the alleged agreed line to the north thereof.

We think that under the cases of Lamar, et al, v. Williams, et al., 39 Miss. 342; Jacks v. Bridewell, 51 Miss. 881; Snell v. Fewell, 64 Miss. 655, 1 So. 908; Garner v. Townes, 134 Miss. 791, 100 So. 50; Elmer v. Holmes, 189 Miss. 785, 199 So. 84, and under the cases therein cited, the said John B. Ferguson, Sr. was a competent witness in testifying in regard to the alleged parol agreement between himself and H. B. Cunningham. as prede-

cessors in title of the original complainant and defendant herein.

H. B. Cunningham did not die leaving that portion of Section 15 lying east of the said public highway or any minerals thereunder. The exception or reservation hereinbefore quoted was contained in deeds from M. E. Cunningham as grantor, and it was merely provided therein that the exception or reservation was "for and during the life of H. B. Cunningham of all the oil, gas and other minerals in and under said land"; and the provision that the exception or reservation "shall not terminate with the death of H. B. Cunningham, but shall continue in force as long as the rentals or payments under said lease are made according to the tenor thereof" was also a limitation as to the duration of the exception or reservation unto the grantor in said deeds. The said H. B. Cunningham had already disposed of all of his rights, title and interest in the said minerals, and this exception or reservation in each of these three deeds would not have the effect of reinvesting in him the title to the said minerals, but merely evidenced an intention on the part of the grantor M. E. Cunningham that the said H. B. Cunningham should have the benefits of the said exception or reservation of minerals during his lifetime, and that thereafter the grantor M. E. Cunningham would be entitled to rentals or payments under a then existing lease as long as such rentals or payments thereunder may be made.

However, we are of the further opinion that under the recent case of Lucas v. Lucas, 222 Miss. 474, 76 So. 2d 260, and under the concluding sentence of Section 361, Griffith's Miss. Chancery Practice, 2d Ed., p. 347, and Section 376, p. 359 of the said text and the note thereunder, and Section 377, p. 361, the trial court should have appointed a competent surveyor to establish the true section line between the portions of Sections 14 and 15 here involved, since the defendants were not entitled to have their claim to any land established south of the true sec-

tion line either on the ground of adverse possession or the alleged agreed line without a cross bill asking for such affirmative relief.

Moreover, even though the proof may show that the complainant Phares, at the time he purchased that part of Section 15 lying east of Highway 61, had notice of the location of the alleged agreed line, the defendants would not have been entitled to affirmative relief in this case declaring them to own all of the land north thereof in the absence of a cross bill seeking such affirmative relief as was granted. Neither the original complainant Phares nor the defendant Farrar and his vendor Ferguson had a *record* title to any land other than the land in Sections 15 and 14 respectively according to the true section line dividing the same according to a correct Government survey based on the field notes in regard thereto. Neither the defendant Farrar, as owner of that portion of Section 14 lying east of the said public Highway 61, nor the defendant Ferguson, as owner of one-half of the minerals thereunder were entitled to have their claim established to any portion of the land or minerals of that part of Section 15 lying east of the said public highway and south of the true section line dividing said sections in the absence of a cross bill seeking such affirmative relief either on the ground of adverse possession or on the basis of the alleged parol agreement betwen John B. Ferguson, predecessor in title of the defendant Farrar, and the said H. B. Cunningham, a predecessor in title of the complainant Phares.

The only factual difference between the instant case and the case of Lucas v. Lucas, supra, is that both Farrar and Ferguson, in their separate answers, set up an affirmative plea of adverse possession, whereas this was not done by the defendant in the Lucas case. But even if there had been a plea of adverse possession by the defendant in the Lucas case, he could not have obtained affirmative relief therein except by a cross bill. It just so happened that he neither set up a plea of adverse pos-

session nor filed a cross bill. The failure to do either would have led to the same result. The defendant Ferguson alleged that the "said line is still visible, easily ascertained and should be by this court declared to be the true line between Sections 14 and 15, Township 1, Range 2 West." He then asked that the bill of complaint be dismissed at the cost of the complainant but he did not make his answer a cross bill, as aforesaid, so as to have the court declare the Dixon line to be an agreed line between the said respective former owners.

In the instant case the defendant, Farrar, in his answer to the original bill of complaint, which was reaffirmed in his answer to the amended bill of complaint, alleged that at the time of the acquisition by Ferguson of "all of the Elmsley Plantation lying east of the old Sligo public road, as it existed February 26, 1913," in Section 14, the property to the south thereof was owned by H. B. Cunningham, and that the boundary line between said plantation on the north and the said Cunningham lands on the south had been surveyed and established by mutual agreement between the owners of said lands, respectively, by R. J. McNeil, county surveyor, at some time prior to February 26, 1913. Further, that thereafter the boundary between said properties was agreed upon, fixed and established, surveyed, marked and defined by agreement between the said John B. Ferguson, Sr., and the owners of the said property to the south thereof, as to which the complainant is now asserting title, and such boundary was fixed and established by this previously established and agreed line marked, defined and surveyed, whether the same be on a line that might now be established as being by survey the true location of the north line of said Section 15 and the south line of said Section 14.

The answers further admitted that the old fence and fence line referred to in the bill of complaint and amended bill of complaint "is not on and along the true and correct and agreed and established property line of the

lands of the complainant and defendant, and that such has been mutually known and agreed by and between the plaintiff and defendant and their respective predecessors in title," whereas the defendant, Ferguson, in his answer to the amended bill of complaint alleges that in 1922 or 1923 he employed W. W. Dixon, a competent surveyor, to run the section line between Sections 14 and 15, and that upon completion of said survey and proper marking thereof, the said defendant and one H. B. Cunningham, the then owner of Section 15, did enter into a firm and oral agreement immediately after said line was run, and that said line so run and marked was the true boundary between the said sections, and that the same has long since been the truly established, defined, marked and recognized line between said sections, and that the markings and stakes are now ample to determine the true boundary lines between said sections; that the said defendant, in the year 1950, "undertook to and did erect a fence on a portion of said line leading from the eastern extremity of said U. S. Highway 61 along said line eastwardly; * * *". And the answer further alleges that the survey made by W. W. Dixon was also confirmed by the grandson of H. B. Cunningham as the true and correct boundary line between said Sections 14 and 15, and that the defendant, John B. Ferguson, had for more than twenty years prior thereto "openly, continuously, notoriously, and hostilely claimed and possessed all land lying north of said line so surveyed, run, established and marked by the said W. W. Dixon," and that he and the said H. B. Cunningham agreed at the time of the said survey in 1922 or 1923 that the said line was the true line of demarcation between the lands of the defendant, Ferguson, and the lands of the said H. B. Cunningham, predecessor in title of the complainant, Phares.

Thus, it will be seen that the defendant John F. B. Farrar in his answer relied on the McNeil survey, whereas his grantor John B. Ferguson, Sr., in his answer relied upon the Dixon survey, as being the agreed line be-

tween the respective former owners of that portion of Sections 14 and 15 lying east of the said public Highway 61. We are unable to determine from the record whether or not the McNeil and Dixon surveys were identical. The defendant Farrar did not testify so far as we are able to ascertain from the record and his predecessor in title, John B. Ferguson, Sr., testified in support of the Dixon survey as being the agreed line between him and H. B. Cunningham, predecessor in title of the complainant Phares. Ferguson not being present when the Dixon survey was made, and not knowing whether his survey represented the true section line in question, relied on an agreed line along the survey made by Dixon. Ferguson purchased the land in Section 14 on June 30, 1919, from N. L. Pierce and wife "as per survey of R. J. Mc-Neil."

The chancellor in his decree fixed the line along the new fence built by John B. Ferguson in April of the year 1950, projected on a straight line eastwardly from the end of the said new fence to the eastern boundary line of the said Sections 14 and 15, but which line the complainant contends is sufficiently far north of a straight line eastwardly from the end of the said new fence to take from sixty to sixty-four acres of land which the complainant contends is in Section 15, and the extension of which fence was commenced and then abandoned at the instance of a Mr. Buckley representing the defendant Farrar when he saw that it would intersect the eastern boundary line of the said Sections 14 and 15 some distance north of what the defendants contended to be the agreed line eastward from public Highway 61 to the eastern boundary of the said section of land.

We have concluded that under all of the facts and circumstances disclosed by the record, and in the absence of a cross bill filed by the defendants seeking affirmative relief, the decree appealed from should be reversed and the cause remanded. Even under the proof of adverse possession offered in support of the plea in

that behalf, it does not clearly appear that the defendants had been in the adverse possession for more than ten years of all of the land in Section 14 immediately north of the line as fixed by the final decree. It is shown that open land extended as far south as the new fence built by Ferguson in April 1950, which fence was from one-quarter to one-half mile in length, and that the defendants had used this open land, but proof fails to show that the remaining land north of the line established by the final decree had been in such adverse possession of the defendants for more than ten years within the meaning of Section 711, Code of 1942, it being well-established under our decisions that unless the land claimed by adverse possession is within the calls of the deed of the claimant, he would only be entitled to hold the portion of the land actually held in adverse possession, the extent of which in area is not shown by the proof. Each of the respective claimants had deeds only to the section line dividing Sections 14 and 15, and had paid taxes only on the land called for by their respective deeds. The defendants therefore would have had to rely on the alleged parol agreement between their predecessors in title, any they could not obtain the affirmative relief which we think the final decree accords them except on a cross bill seeking such affirmative relief on the basis of such agreed line. Nor could the defendants be declared the owners of any land that may be in Section 15 on the ground of adverse possession in the absence of a cross bill seeking affirmative relief on that ground.

The final decree expressly adjudicates that the prayer of the complainants that the court appoint a surveyor to make a survey to determine and locate the true line between all that part of Section 15 lying east of said public Highway 61, and all that part of Section 14 lying east thereof, should de denied, it follows that the bill of complaint and amended bill should have been dismissed if the chancellor was correct in holding that the complain-

ant was not entitled to have a surveyor appointed to locate the true section line in question.

We have concluded that the cause should be reversed and remanded in order that a surveyor may be appointed by the court to survey and locate the true section line, according to the Government field notes, or in order that the true line may be located on the basis of the proof that may be offered of the correctness of a survey already made, or of another survey or surveys to be made in that behalf, or on the basis of an agreed line of which the appellant may be shown to have had notice when purchasing the land in Section 15 and down to which the appellees may have been in possession pursuant to the parol agreement relied on.

Reversed and remanded.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.