## LUCAS *v.* LUCAS.

No. 41204          December 14, 1959          116 So. 2d 402

*Jesse W. Shanks,* Purvis; *Earle L. Wingo,* Hattiesburg, for appellant.

*E. J. Currie, Sr. & Jr.,* Hattiesburg, for appellee.

HOLMES, J.

The parties to this action are the owners of adjoining lands in Lamar County, Mississippi. They are brothers and are unfortunately engaged in a dispute as to the correct location of the dividing line between their respective properties. The lands of the appellant, Clarence M. Lucas, were acquired by him either from or through

J. J. Newman Lumber Company under conveyances dated October 29, 1942, and December 12, 1945, respectively, and are described as follows: The W½ of the NE¼ of the SE¼ and the W½ of the E½ of the NE¼ of the SE¼ and the SE¼ of the SE¼ of Section 5, Township 5 N, Range 16 W, Lamar County, Mississippi.

The lands of the appellee, Willie Lucas, were acquired by him from the J. J. Newman Lumber Company under conveyances dated January 20, 1943, and August 10, 1946, respectively, and are described as follows: All of that part of the SE¼ of the SW¼ of Section 5, Township 5 N, Range 16 W, Lamar County, Mississippi, which lies north of the Patterson-Williamson public road; the NW¼ of the SE¼ and the N½ of the SW¼ of the SE¼ of Section 5, Township 5 N, Range 16W, Lamar County, Mississippi.

The disputed area comprises about 6 acres located in the SE¼ of Section 5, Township 5 N, Range 16 W, Lamar County, Mississippi. The appellant, Clarence M. Lucas, claimed to be the owner of all of the land lying east of a north and south fence erected by him in about the year 1938 with the consent of the J. J. Newman Lumber Company, and prior to the acquisition by the said Clarence M. Lucas of his aforesaid lands, it being contended by the said Clarence M. Lucas that the fence formed the correct location of the dividing line between the respective properties of the parties. On the other hand, the appellee, Willie Lucas, claimed that the aforesaid fence was built on his land and embraced about 6 acres of his land.

On June 18, 1949, the appellee, Willie Lucas, as complainant, filed his original bill in the Chancery Court of Lamar County against Clarence M. Lucas as defendant, seeking to have the court establish the correct dividing line between the properties of the respective parties and to cancel as a cloud upon the title of the

said Willie Lucas all claims of the said Clarence M. Lucas to the disputed area. The appellant, Clarence M. Lucas, filed his answer to the original bill, wherein he denied all of the material allegations thereof. He filed no plea of adverse possession and no cross-bill seeking to have the court adjudge him to be the owner of the disputed area. Upon the trial of the cause, the court entered a decree finding and adjudging that the aforesaid fence constituted the dividing line between the lands of the respective parties. The said Willie Lucas prosecuted an appeal to the Supreme Court which resulted in the reversal and remand of the cause. This decision of the Supreme Court was rendered under date of December 13, 1954. Willie Lucas v. Clarence M. Lucas, 222 Miss. 474, 76 So. 2d 260.

In reversing and remanding the cause, the Supreme Court said: "The effect of this decree is to award to the defendant the six acres of land in controversy, in the absence of a plea of adverse possession, and in the absence of a cross bill by the defendant seeking such affirmative relief. In other words, the defendant could not have obtained more relief than the decree affords him if he had interposed a plea of adverse possession and had filed a cross bill asking that his claim of title to the strip of land be quieted and confirmed."

The Court further said: "However, we are of the opinion that it was error to render the final decree appealed from and that the cause should be reversed and remanded without prejudice to the right of either party to prove the location of the true dividing line between their lands."

On the re-trial of the case, it was shown that the lands in question was surveyed by six different surveyors in the attempt to establish the correct dividing line between the lands of the respective parties. These were: Roy Miller, County Surveyor of Lamar County, Robert Watts, a Mr. Lee, D. F. Simmons, one Surveyor, Polk,

and Robert L. Morrison. Miller was selected by the appellee, Willie Lucas. Watts, Lee and Polk were selected by the appellant, Clarence M. Lucas; and D. F. Simmons and Robert L. Morrison were appointed by the court. The evidence showed that the surveys of Roy Miller, Robert Watts, Mr. Lee and D. F. Simmons supported the contention of the appellee, Willie Lucas, as to the correct location of the dividing line between the lands of the respective parties. On the former appeal, the Court said:

The only evidence of substantial value in support of the contention of the defendant that the fence was located on the true line is that of surveyor Polk, but his testimony is in conflict with the weight of such overwhelming testimony of other surveyors to the contrary that we must assume that the decree in favor of the defendant was not based on his testimony in the absence of a finding of fact to that effect, since the record seems to disclose that the decree in favor of the defendant was based upon the theory that it was impossible to locate the true line, and that to establish any other line than the fence would be 'more dangerous to them than both their farms are worth, . . . .' "

The surveyor, D. F. Simmons, was selected and appointed by the court with the consent of the parties as "a disinterested, competent, fit and suitable civil engineer" to make the survey and to start said survey from a proven corner or to prove the same to his satisfaction. Pursuant to this appointment, Simmons made the survey and filed his report, which report was introduced in evidence, and sets forth the following: "I desire to state that after proper investigation, which included the search for extinct corners on the south boundary of Section 5, Township 5 N, Range 16 W, Lamar County, Mississippi, that I did finally and conclusively, without any doubt whatsoever, prove and re-establish from proper references the original southeast corner of

said section, and from this proven corner, I ran west a distance of 1317 feet to locate and establish the southwest corner of the southeast quarter of the SE¼ of said section for a point of beginning. Along this line just mentioned, I found evidences of an old split rail fence. Large trees have grown up along this old fence line. I found ancient blazes in one great pine tree deep in the interior of this tree.''

The appellant Clarence M. Lucas filed exceptions to this report and the court directed that the said Simmons recheck his survey of said lands in an attempt to prove other corners from the field notes ''so that there would be no question whatsoever as to the correctness of said survey,'' and report said findings back to the court. This Simmons did and reported the following to the court: ''Again beginning at the original corner described as being located in the southeast corner of Section 5, Township 5 N, Range 16 W, in Lamar County, Mississippi, I then ran due east 39 chains, 55 links, and having made the proper departure, I proceeded to hunt for the original references and found where two stumps had been burned out and which were in accord with the original references as given in the field notes. This location being in a cultivated field, and since a fence was located some 66 feet south of this point, said fence running east and west and parallel with my survey, this proof was not finally conclusive, the court having requested that I furnish still additional evidence. I then retraced the line that I had run originally west from the aforementioned southeast corner of said Section 5 to the corner that I had established at the southwest corner of the SE¼ of the SE¼ of said Section 5, and thence ran due west 19 chains, 95 links, to the location where the original corner was placed and where the original field notes describe two pine trees as being referenced from said original corner. Having made the departure as described in the original field notes and

computed therefrom, I found two large stump holes and having dug into these stump holes, I found the tap roots which evidenced the location of two great pine trees. The bearings, distance and location as described in the field notes were checked and double checked and my survey was exact as to this location to the nearest foot an to the degree as described in said field notes. This then proves my original starting point and proves at least three original corners without question, indisputable and according to law and practice. I would like to point out that the evidence submitted herewith certainly has not been hidden or obscure these many years since I found, in the presence of witnesses, signs where another survey had been made along the same line that I had made mine, these signs being well evidenced by blazes on trees along this line.''

Testifying as a witness, Mr. Simmons said with reference to his supplemental survey that ''it confirmed the other to the nearest inch—exactly.'' The surveyor Polk did not testify on the second trial of this cause. The proof showed, however, that the surveys of Roy Miller, Robert Watts, Mr. Lee, and D. F. Simmons all coincided and supported the contention of the appellee, Willie Lucas, and rejected the contention of the appellant, Clarence M. Lucas, to the effect that the fence was located on the true dividing line between the lands of the respective parties.

On the second trial of this cause, after both sides had rested, the chancellor, of his own motion, appointed one Robert L. Morrison, a civil engineer, to do ''certain exploratory work'' in connection with a survey of the lands in question. The order appointing Robert L. Morrison provided as follows: ''It is ordered that the said Robert L. Morrison establish the true four corners of Section 5, Township 5 N, Range 16 W, Lamar County, Mississippi, insofar as possible by taking note of all field notes available to him on file in the office of the Chan-

cery Clerk of Lamar County, Mississippi, or those field notes that he might obtain elsewhere for that purpose; that after establishing the four said corners of Section 5, the said Robert L. Morrison will then establish on the south line of Section 5 a point one-fourth the distance from the southeast corner to the southwest corner along said south line of said section, and he will further establish along the north line of said section a point one-fourth the distance from the northeast corner to the northwest corner, and from the said two points, that is, the southwest corner of the SE¼ of the SE¼ and the northwest corner of the NE¼ of the NE¼, the said Robert L. Morrison will then from said two points survey a straight line between said points, which said staked line will then and there become the true line between the lands of Willie Lucas on the east and the lands of Clarence M. Lucas on the west, according to the calls in their respective deeds thereto, and said staked line, when platted by the said Robert L. Morrison, will show thereon along said line the true distance from any fences adjacent thereto running in a north and south direction.''

The proof shows that the said Robert L. Morrison, pursuant to his appointment, went upon the lands in question for the purpose of making a survey as directed by the court. He made his report to the court and filed therewith Exhibit B to his testimony, whereby he undertook to show the true dividing line between the lands of the respective parties. Testifying with respect to what he referred to as his ''exploratory work,'' he said that he proceeded to do this work in response to a request by Chancellor Lester Clark; that he was not employed by any of the people involved but that Judge Clark at that time wanted him to go out and do certain exploratory work and ''actually find out what was on the ground.'' He further testified that he went with Judge Clark along with his crew and some of the interested

people for the purpose of undertaking his exploratory work. He said that Judge Clark showed him where to start and that Judge Clark got the information from somebody and told him, Morrison, where to start. He further said that he did not attempt to run the prop-erty from the southeast corner, that he never ran the property at all, and never made an attempt to do so; that his was an exploratory survey and was for the benefit of the court. He further said that he was not guided by any field notes, but that he got his instructions from Judge Clark; that he did not make any effort to ascertain what the field notes showed to be the true southeast corner of Section 5; that he made no examination of the field notes to determine where the true northwest corner of Section 5 was; that the only thing he did was to ascertain the way Section 5 was supposed to deviate; that he was not going by the field notes at his point of beginning, but was beginning where Judge Clark told him to begin; and that he did not examine the field notes to determine where the southeast corner of the section was. Asked if he checked with Mr. Simmons or Mr. Watts who had previously surveyed the land, he said, "I didn't check with anyone. I did this for Judge Clark entirely." He further said that he did not undertake to make any findings as to the true boundary lines of the property of Willie Lucas and Clarence M. Lucas. Asked if when he started at the northwest part of Section 5 in making his exploratory survey, he found anything that he regarded as being the true official northwest corner of that section as designated by the field notes, he answered: "No, sir, I found nothing." In his report to the court he stated the following: "There is no way to reconcile the property lying in the southern part of the section by coming from points along the north end of the section; and by the same token, there is no way to reconcile lines in the northern part of the section by using any of the

four corners at the southeast corner of the section. It is apparent that earlier surveys made in this section used the southeast corner to lay out property in the southern end of the section and points or corners along the northern section lines were used to lay out property in the northern part of the section; consequently, in the center part of the section, one would get one result by using the southeast corner and an entirely different result by using any of the corners found along the northern part of the section.''

In other words, according to the proof, Mr. Morrison reported to the court that he was unable to establish the correct dividing line between the property of the complainant and defendant.

On the second trial, the appellant, Clarence M. Lucas, filed an amended answer and cross-bill wherein he incorporated a plea of adverse possession and prayed that title to the disputed area be confirmed in him.

At the conclusion of the trial, the chancellor rendered a decree wherein he found and adjudged that the appellant, Clarence M. Lucas, had failed to establish title to any of the land in controversy by adverse possession and that the cross-bill of the appellant, Clarence M. Lucas, should be dismissed, and further found and adjudged that the survey and report of the said Robert L. Morrison and the line running north and south between the lands of the respective parties as shown by the report of the said Robert L. Morrison and by his Exhibit B thereto should be and the same was approved and adjudged to be the dividing line between the lands of the respective parties.

Both parties were aggrieved by the decree of the court and the appellant, Clarence M. Lucas, prosecuted a direct appeal therefrom to the Supreme Court, and the appellee, Willie Lucas, prosecuted a cross-appeal from said decree of the Supreme Court.

■■ ■ The appellant on this appeal assigns as error the finding of the chancellor that he had failed to establish title to the disputed area by adverse possession and the action of the chancellor in dismissing his cross-bill. We are of the opinion that the evidence was wholly insufficient to establish title in the appellant, Clarence M. Lucas, by adverse possession and that the action of the chancellor in dismissing his cross-bill was correct.

■■■ The appellee and cross-appellant, Willie Lucas, assigns as error the action of the chancellor in rendering a decree establishing the line between the property of the respective parties in accordance with the survey and report of Robert L. Morrison. It is manifest from a casual examination of the testimony of Mr. Morrison that his exploratory survey is of no evidentiary value in establishing and locating the correct dividing line between the lands of the parties. On the other hand, the testimony for the appellee and cross-appellant, Willie Lucas, establishes overwhelmingly that the true dividing line between the properties of the respective parties is that located according to the surveys, plat and reports of the surveyor, D. F. Simmons. We are accordingly of the opinion that the chancellor erred in decreeing the true dividing line between the lands of the respective parties to be that undertaken to be shown by the report and exhibit B filed by Robert L. Morrison, and further erred in disregarding the overwhelming testimony showing the true dividing line between the properties of the parties to be that established by the surveys, plat and reports of the said D. F. Simmons.

Accordingly, the decree of the court below is affirmed on the direct appeal of Clarence M. Lucas, and the cause is reversed on the cross-appeal of Willie Lucas, and a decree is entered here establishing the true dividing line between the lands of the respective parties in accordance with the surveys, plat and reports of D. F. Simmons, civil engineer.

Affirmed on direct appeal, reversed on cross-appeal, and decree here for the cross-appellant.

*McGehee, C. J.,* and *Hall, Ethridge* and *Gillespie, JJ.,* concur.