143 Miss.]                        Syllabus.

WINEMAN et al. v. WITHERS et al.*

Division A.   May 17, 1926.   Suggestion of Error Overruled June 15,
1926.\

[108 So. 708.   No. 25698.]

1. WATERS AND WATER COURSES.   *Title of owner of land on nonnavigable river embraces land under water to middle of stream.*
   When one of boundaries of land is nonnavigable river, title of owner of upland embraces also the land under water to middle or thread of stream.

2. WATERS AND WATER COURSES.   *Title of owner. of land on nonnavigable river is controlled in case of alluvion by fact that it was formed over land already his.*
   Title of owner of upland bounded by nonnavigable river to alluvion, and to new bed of river formed by encroachment, is controlled in case of alluvion by fact that it was formed over land that, although under water, was already his, and in case of encroachment by fact that he owned land before encroachment of river thereon.

3. WATERS AND WATER COURSES.   *Old shore line held properly disregarded in apportioning new shore line between adjoining landowners, where river receded after encroachment.*
   Where nonnavigable river receded after encroachment, old shore line was properly disregarded in apportioning new shore line between adjoining landowners, since shore line formed by alluvion was but a restoration of the old shore line.

*Corpus Juris-Cyc References: Waters, 40 Cyc, p. 620, n. 70; p. 622, n. 90; p. 623, n. 1; Title to bed on nonnavigable stream in riparian owner, see notes in 42 L. R. A. 171; 70 L. R. A. 275; 27 R. C. L., p. 1371; 4 R. C. L. Supp., p. 1793; 5 R. C. L. Supp., p. 1504.

APPEAL from chancery court of Tunica county.
HON. C. L. LOMAX, Chancellor.
Suit by L. W. Wineman and others against S. A. Withers and others. Decree for defendants, and plaintiffs appeal. Affirmed.

*Watson & Jayne,* for appellants.

An issue was made up between appellants and the Messrs. Withers in reference to their respective interests in that part of the accretions in question lying along the front of their respective ownerships and that is the issue now before this court.

I.  *"Accretions"* Defined.    Accretions have been defined by the textwriters and the courts with varying expression, but in substance alike; some of the writers using the term "accretions" and others using the term "alluvion," while still others have attempted to distinguish between these terms.   See Cooper's Justinian, sec. 20, p. 74; Vattel's Law of Nations, sec. 268, pp. 120-21; Code Napoleon, sec. 556, p. 154; 1 C. J., p. 730; 29 Cyc. p. 348; 1 Franham, sec. 69, p. 320; *Nebraska* v. *Iowa,* 143 U. S. 359-370, 36 L. Ed. 186; *Yetterman* v. *Grier,* 112 Ark. 371, 166 S. W. 751; *Nix* v. *Pfeifer,* 73 Ark. 203, 83 S. W. 953.

II.   *Accretions on Boundary Streams.*    (1) The general rule is that where a river forms a boundary between nations the line of demarkation follows the middle channel.   Vattel's Law of Nations, ch. XXII; Davis on International Law, p. 46.

(2) International law controls river boundary questions between the states of the nation.   *Hanley's Lessee* v. *Anthony,* 5 Wheat. 376, 5 L. Ed. 114.

(3) Accretions belong to the shore ownership to which they form whether (a) the boundary be the center thread of the stream; or (b) be along the shore of the river. See Vattel's Law of Nations, ch. XXII, sec. 269; *Hanley's Lessee* v. *Anthony,* 5 Wheat. 376, 5 L. Ed. 113.

(4)   The rule between nations and states controlling accretions on boundary streams applies to private properties.   *Arkansas* v. *Tennessee,* 246 U. S. 158, 62 L. Ed. 638, 647, L. R. A. 1918-D 258, 38 Sup. Ct. Rep. 301.

III.   Private Ownership on Boundary Streams Subject to

(a) Increase: 1 Farnham on Waters, 324, sec. 70; Wattel, sec. 269, p. 121; *Nebraska* v. *Iowa,* 143 U. S. 359-370, 36 L. Ed. 136;

(b)   Diminution: 1 Farnham on Waters, 324, sec. 70; Vattel, sec. 269, p. 121; *Nebraska* v. *Iowa,* 143 U. S. 359-370:

(c) ˙Extinguishment, Extinguishment may go to the extent of completely wiping out the ownership of the riparian ownership and converting the next real ownerships into riparian ownership with the following results:

(a) That first riparian ownership loses its character as an ownership; and

(b)   The new riparian owner takes all accretions thereafter formed to his land, regardless of such accretions progressing forward over the former riparian ownership; or

˙(c)   The extinguishment may be partial, in ˛which event all sectional lines on the extinguished areas are obliterated and thereafter all accretions made to the particular riparian ownership are controlled by and apportioned in accordance with the law of accretions.

(a and b)   1 Farnham on Waters, bottom of p. 332; *Minton* v. *Steele* (Mo.), 28 N. W. 746; *Bush* v. *Alexander,* (Ark.), 203 S. W. 1028; *Widdecomb* v. ˈ*Childs,* (Mo.), S. W. 444, 61 L. R. A. 309; *Nailor* v. *Cox* (Mo.), 21 S. W. 587; *Wells* v. *Bailey* (Conn.), 10 Atl. 563; *Nebraska* v. *Iowa* (U. S.), 36 L. Ed. 186; *Parker* v. *Canter* (Kan.), 63 Pac. 617.

IV.   Apportionment of Accretions on Boundary Streams:

(a) As between opposite ownership:   The rule with regard to ˌdivisions of accretions in cases of opposite ownership is well stated in 3 Farnham, secs. 845 and 845-a, p. 2489, and sec. 847, p. 2491;

(b) As between adjacent ownership: The accretions should be apportioned according to the following formula:

(1) To ascertain the length of the old shore to which the accretions have formed, and reduce that length to a common unit of measurement, such as feet, yards, rods, etc., or to metric lineal units;

(2) To do likewise with the new frontage and divide the same into as many units as there are in the old shore, then allocate to each proprietor as many proportions of the new frontal line as he owned of the old frontal line;

(3) Then to complete the division by drawing lines from the points at which the proprietors be respectively bounded on the old, to the points thus determined on the new frontal line.

The general rule thus laid down seems to have been first thoroughly worked out and adopted by the supreme court of Massachusetts in *Deerfield* v. *Arms,* 17 Pickering 45-46, 28 Am. Dec. 276.

As neither of the riparian properties can establish any claim superior to the other, it is manifest that the newly acquired land must be divided equally between the parties in proportion to the land which they respectively hold as riparian proprietors and in virtue of which the law attributes to them this acquisition.

It will be observed that the court based the principle of equitable apportionment on two foundations: (1) Equitable apportionment of the area; (2) to secure to each an access to the water and an equal share of the river line in proportion to his share of the original line of the water. *Deerfield* v. *Arms* was approved in the Supreme Court of the United States in *Johnston* v. *Jones,* 1 Black (66 U. S. 209, 17 L. Ed. 117).

The rule adopted as above has, with few exceptions, been followed in the United States and the reasoning thereof seems to be satisfactory from a standpoint of

equity as well as from a standpoint of giving to each riparian owner continued access to the water front.

In Louisiana the civil code has adopted in statutory form the general rule as above stated and the Louisiana court in *Newell* v. *Leathers,* 23 So. 245-46-47, goes into the reason for the rule, approving the *Deerfield* v. *Arms, Johnston* v. *Jones,* and other cases upholding the doctrine here contended for and especially contends that the two main purposes are subserved by this rule; to-wit: (a)   That the principle of equity is subserved; and (b)  that the right of the riparian owner to water frontage is safeguarded, citing on the last point *St. Louis* v. *Rutz,* 138 U. S. 226, 34 L. Ed. 951. Numerous other cases may be cited also. See *Malone* v. *Mobbs,* 102 Ark. 545, 145 S. W. 194; *Reeves* v. *Moore,* 105 Ark. 598, 151 S. W. 1025; *Peuker* v. *Canter,* 62 Kan. 373, 63 Pac. 621; *Watson* v. *Horn,* 64 N. H. 418, 13 Atl. 790; *Groner* v. *Foster,* 94 Va. 653, 27 S. E. 493; *Northern Pine Land Co.* v. *Bagley* (Wis.), 54 N. W. 496-500; *Yutterman* v. *Grier* (Ark.), 166 S. W. 750; *Berry* v. *Hoogendoorn* (Iowa), 108 N. W. —; *Hathaway* v. *City of Milwaukee,* 111 N. W. 570; *Blodgett & Davis Co.* v. *Peters* (Mich.), 49 N. W. 917.

Great emphasis is placed on the importance of the preservation of water frontage to each riparian owner in the apportionment of accretions by every court that has passed upon the question of apportionment.   So that in the adoption of any rule for the apportionment of accretions on a navigable river, the courts keep an eye to this important feature.   So important is this right that some of the courts, including that of Mississippi, will not permit accretions formed to islands within the confines of one ownership to pass the line of a coterminous neighbor and cut the latter from access to the navigable stream.   *Mulry* v. *Norton,* 100 N. Y. 437, (3d Ed.), N. E. 586; *Archer* v. *So. Ry.,* 75 So. 251; *City of St. Louis* v. *Rutz,* 138 U. S. 226, 34 L. Ed. 951.

One of the rights of a riparian owner is access to the navigable part of the river to the front of his land and to make a landing wharf or pier for his own use or the use of the public. *City of St. Louis* v. *Rutz,* 34 L. Ed. 949; *Dutton* v. *Strong,* 66 U. S. —, 1 Black 23, 17 L. Ed. 29; *St. Paul & P. R. Co.* v. *Schurmeyer,* 74 U. S. —, 7 Wall 272, 19 L. Ed. 74; *Yates* v. *Milwaukee,* 77 U. S. —, 10 Wall 497-504; 19 L. Ed. 984-86.

V. *Effects of, the Application of Any Other Rule of Apportionment Than That Invoked in the Instant Case.* It is earnestly urged by appellants that the rule invoked by them is the only rule that will give equitable results in the instant case.

(a) If the method of apportionment used in *Leavenworth* v. *Smith,* 57 So. 803, be applied to the lands here, the appellant would be entirely cut off from the water front.

It will be borne in mind that the Mississippi court did not adopt the method of apportionment used in *Smith* v. *Leavenworth,* as a general rule for apportioning accretions but only let the apportionment there made stand because it worked out substantial justice. In that opinion Chief Justice SMITH stated the rule to be as contend by appellant in the instant case in the following language:

"The general rule for apportioning alluvion between coterminous landowners is to give to each such proportion of the new shore line as they possessed of the former shore line before the formation of the alluvion."

To use the method of *Leavenworth* v. *Smith,* would also cut complainants entirely off from a water frontage so far as other lands in this case are concerned. Nor could justice be worked out by attempting to extend perpendicular lines from the boundaries of the parties to the cause outward and perpendicular to the Mississippi River. Nor could justice be worked out by attempting

to extend the old section lines in the direction they would run if projected.

*Dulaney & Jaquess,* for appellees.

I.   *Title to Submerged Lands.*   As early as 1844 it was held in Mississippi that the holder of a riparian grant owned the submerged land to the thread of the stream subject only to the right of the public for navigation and this has frequently been re-affirmed by the court.   *Archer* v. *Greenville Sand & Gravel Co.,* 233 U. S. 60, 58 L. Ed. 850; *Morgan* v. *Reading,* 3 S. & M. 366; *Magnolia* v. *Marshall,* 39 Miss. 109; *Ry. Co.* v. *Frederic* 46 Miss. 1.   It has also been conceded in *Archer* v. *So. Ry. Co.,* 114 Miss. 403, 74 So. 251, and expressly held in *So. Ry. Co.* v. *Archer,* 120 Miss. 376, 82 So. 261, that the owner of both the shore and the submerged land may sell the one and retain the other.

This rule is not directly controverted by counsel for appellants but they hesitate, however, to follow it to its logical conclusion in the case at bar.   On the contrary they offer to the court for its guidance a great number of authorities from states which do not recognize any title to submerged lands and which, therefore, according to our view, could not be followed by this court without, in effect, modifying the established rule of property and divesting titles which have long been held under these decisions of our court.

II.   *Boundaries on Submerged Lands.*   Private ownership of submerged lands necessarily implies boundaries between adjacent owners.   All of the riparian owners along the Mississippi River from Tennessee to Louisiana do not own all of the submerged lands, but each owns a portion thereof in severalty acquired by the original grantee from the government.   We must assume that these boundaries between adjacent owners, or the principles from which they must be ascertained, have ex-

isted since the times of the original grants. Obviously, it would not be possible to solve the problem by apportioning all of the submerged land along the entire river front in proportion to the shore line of the respective owners. It is equally clear that where the thread of the river was parallel with the shore line the problem could be settled with all fairness by establishing boundaries at right angles to the shore line. An examination of the plat shown in 101 Miss. 242, in connection with the case of *Smith* v. *Leavenworth,* 101 Miss. 238, 57 So. 803, makes it at once apparent that the same rule could be applied with equal fairness in a case where the shore had a convex curve; and we think that an examination of the plat in the case at bar shows that it could be applied fairly where the shore line was concave. Of course, in applying such a rule minor irregularities in the shore line would properly be ignored and it is conceivable that the shore in some reaches of the river might be so irregular that justice would require a modification of the rule. However, the adoption of a rule which could be fairly applied whether the shore line was a convex or a concave curve or straight would solve the problem in the large majority of cases and would be consistent with all earlier decisions of this court.

We cannot be certain whether this principle was called to the attention of the court or considered in *Smith* v. *Leavenworth,* 101 Miss. 238, 57 So. 803, but the boundary that was established in that case was apparently the same as if the principle had been considered, to-wit: a line drawn at approximately a right angle to the old river bank. The real controversy in that case seems to have been not as to how the accretions should be divided but as to whether there should be any division at all.

The rule for which we contend seems, however, to have been recognized by this court in the later case of *Archer* v. *So. Ry. Co.,* 114 Miss. 403, 75 So. 251.

We submit further that the submerged boundary is a fixed one and not a shifting boundary.

III.  *The Lands to be Considered.*  The court very properly took into consideration only those shore lands which were mentioned in the consent decree and those formed lands which properly belonged thereto.

If we are correct as to the rules which we have set out above, the court was certainly correct in the determination of the lands which properly belonged to appellants and appellees by establishing a line at right angles to the shore at the northwest corner of appellants original land.  If the line has been established before the new lands were formed, it would undoubtedly have been established in substantially the same manner as was done by the chancellor after the lands rose above the water and we think that we have shown that the boundary was a fixed one which did not become vagrant merely because deposits had been made on either side of it. Again, appellants can scarcely complain that the fixing of this line at right angles to their northwest corner gives to them and appellees too much land for division because, if too much, they participate in the excess. Appellants are not complaining that the fixing of this line gives to them and appellees too little land for division.

IV.  *Deposits on the Site of Original Land.*  The court held that the washing away of the surface from some of the original lands of both parties and the subsequent deposits thereon raising them above the water had affected no title.  The site was the same and, of course, at all times some of the original land remained and still remains.  At one time it was covered with a soil that has been washed away.  Later it was covered with water. Still later it was covered with fresh deposits.  The correctness of this holding is challenged by the assignment of errors although it does not clearly appear why these changes in the surface which have occurred in the past

143 Miss.—35.

and will doubtless recur in the future should affect the title.    3 Farnham on Waters and Water Rights, 2497 et seq.; *Ocean City Ass'n* v. *Shriver,* 64 N. J. L. 550, 51 L. R. A. 425, 46 Atl. 690; *Mulry* v. *Norton,* 100 N. Y. 426; 53 Am. Rep. 206, 3 N. E. 581.

It is apparent that when we speak of the apportionment of accretions or the doctrine of submergence and reappearance in Mississippi we mean something different and must look beyond the rules established in other states if the problem is to be solved in a manner consistent with the rights of the parties as established by the early cases.

The term "submergence and reappearance" has generally been used to refer to an ancient doctrine to the effect that when a party loses title to land by submergence, he regains it when the land reappears or emerges on the same site.    Of course, in Mississippi where title is not lost by submergence it is not necessary to base the claim upon its reappearance or emergence, but we desire to refer to the doctrine as enlightening in the present controversy.    See *Allard* v. *Curran* (S. D.), 168 N. W. 761.    For early statement of the doctrine of submergence and reappearance by Sir Matthew Hale, see *Mulry* v. *Norton,* 100 N. Y. 426, 53 Am. Rep. 206; 29 Cyc. 352; and also *Fowler* v. *Wood,* 73 Kan. 511, 85 Pac. 763, 117 A. S. R. 534; *St. Louis* v. *Rutz,* 138 U. S. 226, 11 Sup. Ct. Rep. 337, 34 L. Ed. 941; *Ocean City Ass'n* v. *Shriver,* 64 N. J. L. 550, 51 L. R. A. 425 and note.

It seems, therefore, that if the parties had lost title by submergence, they would have regained title to this original land when it reappeared.    But title was never lost.    Fifty feet of the river water could no more change the title than could a spring shower.

V.    *The Method Used by the Court.*    In many states, as stated by counsel for appellants, accretions have been apportioned by dividing the new shore line in proportion to the length of old shore line held by the respective

parties.  This is the basis contended for now by the ap-
pellants.  It happens that it is also the basis used by
the court below.

The court below had first to determine what was the
old shore line and what was now the new shore line.  It
determined that the old shore line was the line which ex-
isted at the time of the government survey, properly
holding, we submit, that the line had not been obliterated
because it had been covered with water at times.  In
determining the new shore line, the lower court properly
refused to disregard a portion of it which was affected
by the adverse possession of third parties and deter-
mined it on a fair basis and one which rests on sound
principle, if we are correct in our application of the
early decisions.

Having determined these two lines, the court made
the division and established the boundary in the pre-
cise manner contended for by appellants and supported
by their authorities from other states.  If the chancellor
was not correct in adopting the method suggested by ap-
pellants, they cannot complain because it gives them
more than they were entitled to had he determined the
original submerged boundary.

An equitable apportionment has been made.

Argued orally by *H. C. Watson,* for appellants, and
*J. W. Dulaney,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is a suit in equity by the appellants to quiet their
title to certain land and to cancel the appellees' claim
thereto.  The appellants and the appellees own adjoin-
ing land bounded on the west by the Mississippi river
and under the calls of their deeds own to the thread of
the stream. *Morgan* v. *Reading,* 3 Smedes & M. 366; *The
Magnolia* v. *Marshall,* 39 Miss. 109.  A large body of
alluvion has formed in front of this land, and the dis-

pute between the parties hereto is as to where the line which separates their portions of this alluvion should be drawn.

The contentions of the parties and the grounds thereof can best be set forth by reference to a plat annexed hereto showing the original and present river boundary of the land. The land originally owned by the appellants is designated on this plat by the figure "1" and that

owned by the appellees by the figure "2." The original river bank, as it was when the land was surveyed and sold by the government, is represented on this plat by the line A, B, C. A number of years ago the river encroached slightly on the appellants' and considerably on the appellees' land; the new river bank formed thereby being represented by the line, A, D, E. Afterwards the alluvion here in controversy commenced to gradually form, and after several years not only restored the land that had disappeared, but in addition thereto formed a considerable body of land in front of that of the parties hereto. The line A, B, C, representing the original river bank, has been re-established with reasonable certainty. The contention of the appellants is that the new

water front formed by this alluvion should be divided between them and the appellees in the same proportions as the old water front, and the side boundary line between their portions of the alluvion should be run in a straight course from the point of division between their lines on the original river front to the point of division on the new.

A further contention of the appellants is that the back shore line, which should be taken into consideration in apportioning the new shore line, is the line A, D, E, formed by the encroachment of the river on the land of the appellants and the appellees, and not line A, B, C, which represents the original shore line before it was encroached on by the river. The court below adopted the rule contended for by the appellants as to the apportionment of the new shore line, but held that the old shore line, according to which the new shore line should be apportioned, was not that formed by the encroachment of the river, but was the shore line as it existed before the encroachment began, and represented on the plat by the line A, B, C. The line between the alluvion owned by the appellants and that owned by the appellees was held to be the line designated on the plat as B, F.

Appellees' contention is that this alluvion should be divided between the appellants and the appellees by a line drawn from the point of division between them on the original shore line, represented on the plat by the letter B, at right angles to the thread of the river, and that a line so drawn would practically coincide with the line B, F, established under the rule adopted by the court below. But, if mistaken in this, the appellees' further contention is that the alluvion formed between the original shore line A, B, C, and the shore line A, D, E, made by the encroachment of the river on the land, should not be taken into consideration in apportioning the present shore line between the appellants and the appellees; in other words, that the title to that portion of the alluvion should not be determined by the law of accretion, but by

the law of submergence and reappearance of land. If either of these two contentions of the appellees is sound, the appellants must fail, for in that event they have been awarded all of the alluvion to which they are entitled. The view we have taken of the second of the appellees' contentions relieves us of any necessity of determining the rule by which alluvion formed in front of the land of adjoining riparian owners should be divided between them, and we will express no opinion relative thereto.

When one of the boundaries of land is a river that is nonnavigable within the meaning of the common law, as is the case here, the center or thread of the stream, and not the water's edge, is the boundary, and the title of the owner of the upland embraces also the land under the water to the middle or thread of the stream. *Morgan* v. *Reading* and *The Magnolia* v. *Marshall, supra.* The title of the owner of such land to alluvion, and to the new bed of the river formed by the encroachment of the river on the upland by erosion, is not wholly dependent, if at all, on the law of accretion, but is controlled in the case of alluvion by the fact that it was formed over land that, although under water, was his, and in the case of encroachment of the river by reason of erosion by the fact that he owned the land before the encroachment of the river thereon. The center or thread of the stream in either event continues to be his water boundary, and he continues to own all of the land, either above or under the water, that lies between that boundary and the opposite upland boundary established by the calls of his deed. When the river encroached on the land of the appellees, they continued to own the land under the river bed, and, when the alluvion formed thereon, it, of course, also became his for the reason that it formed over his land. 3 Farnham on Waters, section 848; *City of St. Louis* v. *Rutz,* 138 U. S. 226, 11 S. Ct. 337, 34 L. Ed. 941. To the same effect is the rule governing the title to land which becomes submerged, but afterwards reappears, although the boundary of the original tract is the water's

edge. *Ocean City Association* v. *Shriver,* 64 N. J. Law, 550, 46 A. 690, 51 L. R. A. 425; *Mulry* v. *Norton,* 100 N. Y. 426, 3 N. E. 581, 53 Am. Rep. 206.

It follows, from the foregoing views, that the shore line formed by the alluvion which replaced the land of the appellees, which had been submerged, was but a restoration of the appellees' old shore line, and therefore the court below committed no error in refusing to take it into consideration in apportioning the new shore line between the appellants and the appellees.

We understand the contentions of the parties here pressed to be as hereinbefore set forth, but, if we have made a mistake relative thereto, we will be glad to take the matter up for further consideration on a suggestion of error.

*Affirmed.*