## Mason *v.* Gaddis Farms, Inc.

No. 40436 March 25, 1957 93 So. 2d 629

*L. F. Easterling, Colbert Dudley,* Jackson, for appellant.

*Vardaman S. Dunn,* Jackson; *Jas. H. Adams,* Raymond, for appellee.

Kyle, J.

The appellant, D. G. Mason, filed his bill of complaint in the Chancery Court of the Second Judicial District of Hinds County against the appellee, Gaddis Farms, Inc., seeking to have the court confirm his title to the 40-acre tract of land described as the SW¼ of the NW¼ of Section 26, Township 7 North, Range 3 East, and two other small parcels of land in the NW¼ of said Section 26 adjoining the said 40-acre tract, one parcel, containing 5.2 acres, referred to in the record as "Parcel A", lying immediately north of the said 40-acre tract and being a fractional part of the NW¼ of the NW¼ of said section, and the other parcel, referred to in the record as "Parcel B" containing 3.1 acres, lying immediately east of said 40-acre tract and being a fractional part of the SE¼ of the NW¼ of said section. The appellant alleged in his bill that he had acquired title

to the 40-acre tract of land described as the SW¼ of the NW¼ of said Section 26 by a deed of conveyance of said land from Susanna Mason dated December 16, 1911, and that he had acquired title to the other two small parcels of land by adverse possession for the statutory period of ten years. The appellant asked that his title to said lands be confirmed as against the appellee, and that the court issue a mandatory injunction commanding the appellee to put back and restore certain fences on the two parcels of land referred to as parcels "A" and "B", which the appellee had recently torn down and removed from said two small parcels of land, and that the appellant be awarded damages for the appellee's alleged trespass upon the land.

In its answer to the bill of complaint the appellee admitted that the appellant was the owner in fee simple of the 40-acre tract of land described as the SW¼ of the NW¼ of said Section 26, and disclaimed any interest therein. The appellee, however, denied that the appellant was the owner of, or had any right, title or interest in the remaining two parcels of land referred to in the bill of complaint as parcels "A" and "B". The appellee incorporated in its answer a cross bill in which it alleged that it was the owner in fee simple of the N½ of the NW¼ and the SE¼ of the NW¼ of Section 26, which included the two small parcels of land referred to in the bill of complaint, under and by virtue of a deed of conveyance executed by J. L. Gaddis to the appellee on December 4, 1936. The appellee deraigned a record title to the 120 acres of land and asked that the appellant's claim to the two small parcels of land be cancelled as a cloud upon the appellee's title and that a decree be entered confirming the appellee's title and ownership of the land against the claims of the appellant.

Eighteen witnesses testified during the hearing before the chancellor.

At the conclusion of the hearing the chancellor entered a decree dismissing the appellant's bill with prejudice insofar as it related to his claim of title to the lands lying outside of the SW¼ of the NW¼ of Section 26. The chancellor, however, awarded damages to the appellant in the sum of $20, as compensation for fence wire and posts belonging to the appellant, which the appellee's workmen had removed from the disputed areas. The chancellor confirmed the appellee's title to the NW¼ of the NW¼ and the SE¼ of the NW¼, which included the two small parcels of land referred to above, and established the boundary lines between the 40-acre tract of land owned by the appellant and the two 40-acre tracts owned by the appellee. From that decree the appellant has prosecuted this appeal.

The appellant's attorneys argue as ground for reversal of the judgment of the lower court: (1) That the chancellor erred in failing to take into consideration and give effect to the testimony of the appellant's witnesses which showed that the land in dispute had been in the appellant's possession for a period of more than 40 years, and (2) that the decree of the chancellor is contrary to the overwhelming weight of the evidence.

After a careful reading of the voluminous record, however, we think that it cannot be said that the chancellor was manifestly wrong in his finding that the appellant's proof was insufficient to show that he had acquired title to the two small parcels of land lying outside of his 40-acre tract by adverse possession for the statutory period of ten years.

The parcel of land described in the appellant's bill as Parcel "A", containing 5.2 acres, is 1009 feet in length lying immediately north of and alongside the appellant's 40-acre tract, and is bounded on the west for a distance of 184.5 feet by the county road, and on the north by an irregular elliptical line running northeastwardly, east-

wardly and southeastwardly to a point of intersection with the north boundary line of the 40-acre tract approximately 300 feet west of the northeast corner of the 40-acre tract. The parcel of land described in the appellant's bill as Parcel "B", containing 3.1 acres, is a wedge-shaped strip of land lying immediately east of the 40-acre tract, beginning 92 feet south of the northeast corner of the 40-acre tract and extending eastwardly approximately 187 feet, thence southwardly 150 feet, and thence in a southwestwardly and a southerly direction for a distance of 1155 feet to a gum tree near the southeast corner of the 40-acre tract.

The basis of the appellant's claim to the strip of land referred to as Parcel "A", lying immediately north of his 40-acre tract, was the alleged occupancy of the strip by the appellant up to a "turnrow", which the appellant claimed had been recognized as the north boundary line of his 40-acre tract by Susanna Mason, the appellant's grantor, who continued to own the land lying north and east of the appellant's 40-acre tract until her death in 1929. The appellant testified that the alleged turnrow tied into a 2-strand barbed-wire fence running in a southeasterly direction from a small wooded grove or clump of bushes near the northeast corner of the appellant's 40-acre tract, to an elm tree located a short distance south and east of the northeast corner of the 40-acre tract. The appellant offered a mass of testimony tending to show the continued existence of the turnrow for a period of approximately 40 years, and also tending to show that the appellant had maintained for many years a barbed-wire fence running in a southeasterly direction from the wooded grove, at the east end of the turnrow, to the above mentioned elm tree. It was also shown that there were remnants of a zigzag fence along the east side of the appellant's 40-acre tract, running in a southwesterly and southerly direction from the elm

tree to a gum tree located near the southeast corner of the 40-acre tract. The appellant, however, admitted that he had had no fence along the north boundary line of his property prior to 1950, other than the zigzag wire fence mentioned above which ran southeastwardly from the small wooded grove to the old elm tree. It was admitted that the appellant had erected a fence on the north side along the route of the turnrow in 1950.

The record shows, however, that the appellant moved off the 40-acre tract of land in 1941 and leased the land to the appellee, Gaddis Farms, Incorporated, and that the appellee was in possession of the 40-acre tract from 1941 to 1946, as the appellant's lessee; and the appellee's secretary, Frank Graves, who was in charge of the appellee's farming operations during that time, testified that all of the land on both sides of the alleged turnrow was broken up with a tractor in 1941, and that the turnrow that was visible at the time of the trial was a turnrow which had been made by the appellee's tenants while the appellee had control of the land on both sides of the turnrow. Practically all of the witnesses testified that the barbed-wire fences running southeastwardly through the wooded grove and across the northeast corner of the appellant's 40-acre tract, to the old elm tree, and the fence running southwestwardly from the elm tree to a point near the southeast corner of the appellant's 40-acre tract were zigzag fences made by tacking strands of wire to trees or bushes and a few posts interspersed between the trees or bushes. None of the fences referred to in the testimony of the witnesses, other than the fence erected along the line of the turnrow in 1950, appeared to have been intended as boundary line fences.

Frank Graves, who had known the appellant's land since 1917, testified that Mason had made several changes in his fences as he moved his pasture from place to place; that the fences were all temporary fences; that they had

none of the appearances of line fences; and that Mason had never made any claim so far as he knew that the fences were line fences. R. L. Harris testified that he moved on the 40-acre tract of land adjoining Mason's land in 1941, and stayed there until 1948; that Mason's fences just zigzagged from place to place; that the fence on the east side was just wire attached "to little old bushes, scrub bushes and things." Tee Harvey, who had known the appellant all his life, and who lived close by, testified to the same effect. The appellant's own son, Lofton, testified that the appellant's fence through the wooded grove had been tacked "to the nearest trees he could get to and the less posts he could use. * * * He just mostly put it up the easiest way he could."

O. J. Woodrow, the surveyor, who had run the lines of the Mason 40-acre tract for the appellee, in January 1955, and had later prepared the plats of the two parcels of land in controversy for the appellant, testified that there were indications of a turnrow on the north side along the line where Mason had built his fence in 1950, down to the wooded grove, and in the wooded grove he found wire in black jack and gum trees here and there. From the elm tree southwesterly Woodrow found "wire nailed to trees and also a few old rotten fence posts that are still standing. * * * It was just a random line." He said, "You have to bear in mind that these fences were just random out there, nailed to trees." Referring to the fence on the north, he said, "This fence was very random. I expect he nailed it from one tree to the next trying to keep the fence on the contour of the earth going up that hill there." Referring to the fence running from the grove of trees to the old elm, he said, "I wouldn't say there is a foot of it straight through there."

The appellee introduced record evidence to show that the appellant had never been assessed with any land in the NW¼ of Section 26 except the SW¼ of said NW¼,

and that Gaddis Farms. and its predecessors in title had been assessed with the remaining lands in the NW¼ of Section 26 by legal descriptions, and had paid the taxes thereon from year to year. It was also shown that the appellant had executed deeds of trust on the 40-acre tract described as the SW¼ of the NW¼ of Section 26 to the Merchants Bank at Bolton, in 1923, 1924, 1925, and 1930; that he had executed a deed of trust on the 40-acre tract to Gaddis and McLaurin in 1931; and that he had executed oil leases on the 40-acre tract in 1930, 1933, 1937 and 1939; and that none of these instruments purported to convey or include any land in the NW¼ of Section 26, except the 40-acre tract described as the SW¼ of the NW¼. Susanna Mason, who had owned all of the NW¼ of Section 26 prior to the execution of the deed to the appellant in 1911, executed later instruments on the remaining lands owned by her in the NW¼ of Section 26. There is no proof in the record to show that the appellant had ever executed any instrument of record which showed that he at any time laid claim to any land in Section 26 other than the 40 acres described as the SW¼ of the NW¼.

It was admitted that the appellant had no record title, or color of title to the two parcels of land in controversy. The burden of proof was therefore upon the appellant to show that he had been in possession of the two parcels of land under claim of ownership for the statutory period of ten years, and that his possession had been actual, open, hostile, exclusive, and continuous for the statutory period. The appellant does not claim to have had the 5.2 acres of land under fence at any time until 1950. He does not claim to have erected any improvements upon either of the two parcels of land, or to have cut timber on the land. The proof does show that he cultivated land north of the true boundary line and up to a curved turnrow a part of the time. But the area

mentioned was not enclosed by a fence, and the appellant cultivated the land up to the turnrow only a part of the time. The barbed-wire fence from the east end of the turnrow to the old elm tree served as a part of the enclosure of the appellant's V-shaped pasture, which extended back southwardly to the appellant's barn. The zigzag fence strung on trees and bushes and a few small posts, from the elm tree southwardly to a point near the southeast corner of his 40-acre tract, had not been kept up. █ We think that it cannot be said that the chancellor erred in his finding that the evidence presented by the appellant was insufficient to show that the appellant occupied, held and possessed any definite describable area of land outside of the forty acres deeded him by Susanna Mason, or had been in actual, continuous and uninterrupted possession of same, for a period of more than ten years.

 █ In the case of Snowden & McSweeny Co. v. Hanley, 195 Miss. 682, 16 So. 2d 24, the Court said: "When a fence, or a hedge-row, or the like, is relied upon to delineate the boundaries of the adverse claim the applicable rule is expressed in the latest text on the subject, 1 Am. Jur. p. 870, wherein it is said that, 'The question in such cases is whether the inclosure, like other acts of possession, is sufficient to "fly the flag" over the land and put the true owner upon notice that his land is held under an adverse claim of ownership.' " In the very recent case of Geoghegan v. Krauss, 228 Miss. 231, 87 So. 2d 461, the Court quoted with approval the above statement from Snowden & McSweeny Co. v. Hanley, supra, and in its opinion said: "It was the province of the chancellor to give value and effect to the conflicting testimony as to the existence, repair and reconstruction of fences, and their location with reference to the lands in controversy."

The issues which the chancellor had to decide in this case were questions of fact. The record, we think, dis-

closes ample evidence to sustain the chancellor's finding, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie,* JJ., concur.