Myrtis S. WINEMAN and Wade S. Wineman, Plaintiffs,

v.

SHANNON BROTHERS LUMBER COMPANY, INC., a corporation, Defendant.

No. GC 72–24–S.

United States District Court, N. D. Mississippi, Greenville Division.

Sept. 19, 1973.

Fred C. DeLong, Jr., and James L. Robertson, of Campbell, DeLong, Keady, Robertson & Hagwood, Greenville, Miss., for plaintiffs.

W. H. Daggett, Marianna, Ark., M. E. Ward, Vicksburg, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was tried to the court at the United States Courthouse in Oxford, Mississippi on May 24, and 25, 1973. At the conclusion of the trial the court requested counsel to submit memoranda of authorities for the court's perusal, and, this having been done, the issues are ripe for decision.

This Memorandum contains the court's findings of fact and conclusions of law as required by Rule 52(a), F.R. Civ.P.

The plaintiffs are adult resident citizens of Washington County, Mississippi. The defendant corporation is incorporated in the State of Tennessee, where its principal place of business is situated, and is a citizen of that state. Defendant is authorized to do and is doing business in the State of Mississippi. This action is one of a civil nature. The matter in controversy exceeds the sum or value of ten thousand dollars, exclusive of interest and costs. The court has diversity jurisdiction of the action by virtue of 28 U.S.C.A. § 1332(a)(1). Defendant is before the court on personal service of process in the manner required by law. Rule 4(d)(3), F.R.Civ.P.

Plaintiffs are the present owners of the West Half (W½) of Section Five (5), and all of Section Seven (7) of Township Four South (4S), Range Twelve West (12W), Tunica County,

Mississippi, together with all accretions thereto.

Defendant is the present owner of accretions to Sections Seventeen (17), Twenty (20), and Twenty-one (21), Township Two North (2N), Range Six East (6E) lying South (S) of a line running due East (E) and West (W) from the high bank of Martin Lake at its southernmost point to the Van Hook boundary on the East (E) and the Wineman boundary on the West (W), Lee County, Arkansas.

In 1874 a cutoff or avulsion occurred in the Mississippi River across the base of said Mississippi lands and the old or abandoned channel of the river at the East (E) and Southeast (SE) has long since dried up leaving the lands of the parties hereto contiguous.

On February 6, 1919, in a proceeding in which A. G. Wineman and Sons, plaintiffs' predecessor in title, was plaintiff, and John P. Moore, et al, defendant's predecessors in title, were defendants, this court, acting by the Honorable Edwin R. Holmes, entered its decree fixing the Western boundary of defendant's property and the Eastern boundary of plaintiffs' property, as being "parallel with the original bank of Bourdeaux Island, as it now stands".

Subsequently in 1924, in a suit entitled Moore, et al v. Jackson, et al. in the Lee County Arkansas Chancery Court, Mr. C. B. Bailey, a qualified Civil Engineer, was appointed Master and with particular reference to the 1919 decree of this court surveyed, blazed and painted this line with reference to witness trees and other monuments as running from "Point Two", as set forth in this

court's decree, "South (S) Fifty-Three (53) degrees West (W) Eighty-Nine (89) chains, more or less, to a point on the bank of the Mississippi River." [1]

The controversy in the action sub judice concerns the apportionment between the parties of the post-1919 accretions. Defendant, on the one hand, contends that an equitable division of the accretions is accomplished by continuing the course of and extending the line established by the 1919 decree of this court to the present bank of the Mississippi River. The line, if established, would start at the 1919 bank and run South (S) Fifty-Three (53) degrees West (W) to the present bank. Plaintiff, on the other hand, contends that the correct or proper division line should run from the 1919 bank perpendicular, or at right angles, to the thalweg of the river as it now runs, this line from the 1919 bank running South (S) Thirty-Five (35) degrees West (W) to the thalweg of the river.[2] An additional contention by defendant is that the South (S) Fifty-Three (53) degree West (W) line has been recognized and used as the dividing line between the properties by the parties and their predecessors in title for such a long period of time and under such circumstances as to establish the line by prescription. Thus defendant urges the court to find that it has the superior title to the accretions in dispute by reason of adverse possession.

A graphic illustration of the accretions in controversy is shown by a copy of the Guyer 1971 Survey of the area in question, which was introduced in evidence at the trial as Plaintiffs' Exhibit 9. The exhibit is reproduced as follows:

---

1. It is evident from the record and the evidence introduced at the trial that the line surveyed, blazed and painted by Bailey in 1924 in the capacity of Master in the Arkansas proceedings, was established pursuant to the provisions of this court's decree in Wineman and Sons v. Moore, et al, rendered on February 6, 1919, fixing the division line between the two tracts involved in the action sub judice, as such tracts existed at that time. The starting point, insofar as pertinent to the action sub judice, has been designated by stipulation to be the 1919 bank of the river rather than the "proximate line of willows, November 1924", as shown on Bailey's 1924 map. (Plaintiff's Exhibit 4). The court will refer to the starting or beginning point of the line in dispute in this action, as the "1919 bank of the river", rather than the "1924 bank", being the end of Bailey's 1924 line at the river.

2. In making an apportionment of accretions between coterminous landowners, to run a line perpendicular to the thalweg of the river is sometimes referred to as the "Thalweg rule".

## APPORTIONMENT

Before dealing with the issue of adverse possession, the court will consider and act upon the issue of apportionment of the post-1919 accretions between the coterminous riparian landowners.

 The general rule recognized in practically all jurisdictions is aptly stated in 65 C.J.S. Navigable Waters § 84:

> The rule usually adopted for the apportionment of accretions among contiguous riparian owners is to divide the new shore line among the proprietors in proportion to their respective rights in the old shore line and to draw lines from the points of division thus made in the new shore line to the points at which the old shore line is intersected by the boundaries separating the proprietors.

The general rule has been cited with approval on a number of occasions by the Mississippi Supreme Court. Smith v. Leavenworth, 101 Miss. 238, 243, 244, 57 So. 803, 805 (1911); Board of Supervisors, Adams County v. Giles, 219 Miss. 245, 68 So.2d 483, 488 (1953); Wineman v. Withers, 143 Miss. 537, 108 So. 708, 709 (1926).

The appellant in Smith v. Leavenworth did not seriously complain of the method of apportionment, but of the fact that any apportionment was made at all. The alluvion in question concerned accretions to Sections 13, 14 and 11 owned by Smith, and Section 24, owned by Leavenworth. A plat of the premises in question appears on page 804 of 57 So. Rep. The Chancellor entered a decree dividing the accretions between the parties, giving equal acreage to each. The Supreme Court affirmed the decree of the Chancellor, and, in doing so, said:

> The fact that the alluvion began forming north of section 24 and opposite the land of appellant is immaterial. When it reached appellee's shore line in its southward progress, he became entitled to his portion thereof. The general rule for apportioning al-

luvion between coterminous landowners is to give each such proportion of the new shore line as they possessed of the former shore line before the formation of the alluvion. This rule, however, is not absolute, and there may be exceptional cases requiring the application of a different rule, as was done in the case at bar, in order that justice may be done. This, however, it is unnecessary for us to decide, for the reason that the method of apportionment adopted seems to be more beneficial to appellant than the general rule, and we do not understand him to seriously complain of the method of apportionment, but of the fact that any apportionment was made at all.[3]

The division of the accretions approved by the court in Smith v. Leavenworth, was made on the basis of the acreage in controversy and not upon a strict application of the general rule. An examination of the plat contained in the body of the opinion of the court, however, leads the court to the conclusion that the application of the thalweg rule to the facts involved in the case would have obtained approximately the same results as were achieved by the Chancellor. It is also to be noted that in *Smith* the court did not undertake to extend the division line between the properties into the alluvion formed by the accretions.

In Board of Supervisors, Adams County v. Giles, the court quoted with approval the general rule above mentioned. An examination of the opinion in that case reflects that the division line used for apportioning the accretions had been established by contract on two occasions. The first contract, entered into June 7, 1910 between the complainants and their predecessors in title with the Board of Supervisors of the county, recited "[t]hat, by reason of the survey, there was apportioned to the parties the same proportion of the new water front as they had in 1847."[4] The second contract, entered into May 9, 1951

---

3. 57 So. p. 805.

4. 68 So.2d p. 488.

"[p]rovided for an apportionment of the accretions, batture and alluvion by simply projecting the lines of the survey and boundary which were established by the contract of June 7, 1910".[5]

The primary issue in *Giles* was whether or not the two contracts above mentioned, which attempted to fix the lines and apportion the accretions between the parties, were valid and binding. The court, in holding the contracts binding and valid, and thus accepting and approving the apportionment for which provision was made in the contracts, said:

> Hence assuming the allegations of the complaint to be true, it cannot be said that the methods, which were adopted for the apportionment of these accretions in the establishment of the lines between these lands, were so arbitrary and unjust as to be void and to amount to a donation of public lands in contravention of Section 95 of the Constitution.[6]

The defendant's contention that the proper division line should be a line which projects the line established by the 1919 decree of this court is based primarily on the fact that the original division line was established by a consent decree and that the parties should be bound thereby. The court does not understand defendant to contend that a projection of the prior-1919 accretion division line would be proper under any rule of apportionment other than the rule which requires the parties to recognize a division line established by an agreement between the coterminous landowners or their predecessors in title. This contention pertains to defendant's position that the division line as established in the July 1970 survey by John Moore has been recognized by plaintiffs and their predecessors in title as the true division line since the establishment of the line in 1924 by C. B. Bailey, surveyor. This contention will be the subject of the court's comments on the adverse position issue presented by the parties.

Plaintiffs introduced Austin B. Smith, Registered Civil Engineer, as an expert witness. Mr. Smith's connection with and study of the Mississippi River began more than forty-five years ago. Since 1935, Mr. Smith has been engaged as a consultant on special assignments with the Mississippi River Commission, Lower Mississippi Valley Division. His credentials are impressive, and he is potamologist of renown. Mr. Smith has testified in numerous cases involving the actions of lower Mississippi River. As an expert, Mr. Smith was of the opinion that a line drawn from the division point established by the 1919 decree of this court, perpendicular to the present thalweg of the Mississippi River, would effect a just and equitable division of the accretions in dispute. This line would run from the 1919 division point South (S) Thirty-Five (35) degrees West (W) to the present thalweg of the river. The area on controversy is shown on the survey of the Mississippi River made under the direction of the Mississippi River Commission (1913–15) Chart No. 24, introduced in evidence as Plaintiffs' Exhibit No. 7. Mr. Smith superimposed on this survey notations describing the line as established by him in his study of the problems at hand. The pertinent portion of the survey is here reproduced:

5. Id.

6. Id.

The testimony of Mr. Smith has been received and is considered by the court along with all the other evidence in the case. The court, as the trier of the facts, is not bound by his testimony, but will give it such weight as the court may deem it entitled to receive, taking into consideration Mr. Smith's professional standing and experience.

The court concludes after considering the whole evidence that the thalweg or right angle rule when applied to the accretions in question will bring about approximately the same division as would the general rule.

The court concludes that, absent title by adverse possession, the division line as proposed by plaintiffs makes an equitable division of the accretions between the parties, and is in accord with established legal principles.

## ADVERSE POSSESSION

Defendant contends that the division line established by the Bailey 1924 survey has been projected into and through the post-1919 accretions to the present bank of the river by the acquiescence of the parties.

There is evidence in the case that H. M. Chipman was employed by plaintiffs as a caretaker of their land through 1964, and that in 1956 he constructed a fence in part dividing the plaintiffs' property from the property which now belongs to defendant. The evidence shows, however, that the fence was erected on the dividing line established by the 1919 decree of this court as reflected in the Bailey 1924 survey only until it reached the 1919 bank of the river. After reaching this point the line varied from the bearing of the line and did not purport to follow a projection thereof. Neither party or any predecessor in title of either of them had any connection with the construction of the fence and did not make use of it for any purpose.

Chipman was a game warden for the States of. Mississippi and Arkansas. The fence was constructed for the most part to divide the hunting area between the two states. There was a hunting lodge situated on the property now owned by defendant, of which one of the plaintiffs was a member. Although the fence served Chipman's purpose, the evidence is clear that in the area in question the fence was not constructed or intended to be used by the parties as a division line between their properties.

There is also evidence in the case that plaintiffs sold timber from their property on several occasions, especially in 1965 and 1966, and that no timber was cut by the purchasers east of the South (S) Fifty-Three (53) degree West (W) line. The evidence reflects, however, that the cutting was not limited because of recognition of the line as the true division line of the properties, but, rather in the exercise of care and caution by the purchasers to cut only the timber purchased by them.

Except for the use of the land as a part of a hunting preserve, the accretions in question are largely uninhabited lands, the primary use of which is for the growth of timber.

The plaintiffs were not aware of the fact that defendant or its predecessors in title claimed the true division line of the post-1919 accretions to be the projection of the line surveyed by Bailey in 1924, until July 1970, when John Moore surveyed, cut, blazed and painted the line at the request of defendant. Plaintiffs were not given prior notice of the survey but detected its presence soon after the line was established. Prior to that time, defendant's possession, use, occupancy and control of the accretions in question, and that of its predecessors in title, were not open, exclusive, notorious or hostile, so as to place plaintiffs or their predecessors in title on notice of the claim thereto of defendant and/or its predecessors in title.

The burden was upon defendant to show that it was vested with title by adverse possession to the accretions in question. To accomplish this, the defendant was required to prove that it

alone, or in conjunction with its predecessors in title, had had the actual, open, hostile, peaceable, exclusive, continuous possession of the accretions in dispute for ten years, under claim of ownership thereto. Southern Naval Stores Co. v. Price, 202 Misc. 116, 30 So.2d 505, 32 So.2d 575 (1947); Mason v. Gaddis Farms, Inc., 230 Miss. 666, 93 So.2d 629, 633 (1957); Shepherd v. Mahannah, 220 F.2d 737, 739 (5th Cir. 1955); Berry v. Houston, 195 So.2d 515, 518 (Miss. 1967). The court finds that the defendant has failed to do this.

The court also finds that defendant has failed to establish by the evidence that the projection of the South (S) Fifty-Three (53) degree West (W) line (Moore line, 1970 survey) from the 1919 river bank through the accretions in question to the present thalweg of the river constitutes an established division line between the properties of the parties.

### DAMAGES

The parties negotiated with each other prior to February 25, 1971 in an effort to settle their differences. In the course of the negotiations one of the attorneys for defendant recommended to his client that the line as proposed by Austin B. Smith, the Civil Engineer and Potamologist employed by plaintiffs be accepted. Defendant did not accept the recommendation, acting upon its belief based on the facts at hand that the division line asserted by plaintiffs was not the correct line and that the line proposed by it was in fact the true dividing line. This action on the part of defendant was then communicated by defendant's attorney to plaintiffs' counsel with the invitation to propose any further suggestions counsel might wish to make.

Counsel for plaintiffs did not respond to this communication, and on March 23, 1972, defendant moved upon the accretions in question and cut and removed 72,462 feet of timber. Paul K. Waldrop, a qualified forester, expressed the opinions at trial that the timber was worth $60.00 per thousand feet, or $4,348.02.

The record reflects, however, that on June 13, 1972 in a sworn statement filed in the action, this witness fixed the value of the timber at not less than $50.00 per thousand. Computed on this basis the value of the timber would be $3,623.-35.

The complaint was filed March 17, 1972, but defendant had not been served with process and had no knowledge of the action until after the timber had been cut and removed from the accretions. The process was served on defendant's process agent on March 27, 1972.

■ Taking the whole evidence into consideration, the court finds that defendant acted in good faith in cutting and removing the timber under a claim which defendant felt it had the legal right to assert. The evidence supports the contention of plaintiffs that the timber on the accretions in question belonged to them and that the timber was cut by defendant, its agents or employees, without their consent. The evidence, in the opinion of the court, however, is sufficient to establish the affirmative defense of good faith asserted by defendant. Under these circumstances plaintiffs are not entitled to recover the statutory penalty for which provision is made in Miss.Code Ann. § 1075, as amended (1956), Strawbridge v. Day, 98 So.2d 122, 128 (Miss.1957).

The court holds that plaintiffs are entitled to a decree providing that:

1) All accretions to the lands owned by plaintiffs and defendant formed since February 6, 1919 shall be divided between plaintiffs and defendant by a line drawn as follows: Beginning at the point where the boundary line fixed by Paragraph 8 of the Joint Stipulation of Facts, Plaintiffs' Exhibit No. 1 struck the bank of the Mississippi River on February 6, 1919, and thence on a line perpendicular to the present thalweg of the Mississippi River.

2) The title to the lands lying North and West of the line determined as aforesaid and all accretions thereto shall

be confirmed and quieted in plaintiffs; that all claims of every nature and kind of defendant thereto shall be cancelled and removed as a cloud upon plaintiffs' title; and that defendant shall be ejected from said land and enjoined from hereafter encroaching thereon;

3) Damages in the sum of $3,623.35 shall be assessed against defendant;

4) All claims by plaintiffs for allowances of the statutory penalty provided for in Miss.Code Ann., § 1075, as amended (1956) shall be denied and this portion of the complaint dismissed on the merits;

5) The counterclaim of defendant shall be dismissed on the merits; and

6) Defendant shall be taxed with the costs of the action.