GEOGHEGAN, et al. *v.* KRAUSS, et al.

No. 40059          May 21, 1956          87 So. 2d 461

232

*Lester Franklin, Jr.,* Jackson, for appellants.

234

*Satterfield, Shell, Williams & Buford,* Jackson; *Berger, Callon & Zuccaro,* Natchez; *Corban & Corban,* Fayette, for appellees.

ROBERDS, P. J.

This proceeding involves the question of ownership of a tract of land consisting of 764 acres located in Jefferson County, Mississippi.

Appellants filed the bill herein asserting title in themselves by adverse possession, and praying for a decree so adjudicating and for cancellation of the claim of appellees.· Appellees, by answer, denied appellants were the owners of the land, or had any interest therein, and, by cross-bill, asserted that they were the owners of the land both by record title and adverse possession. The chancellor dismissed the bill and sustained the cross-bill, from which action appellants prosecuted this appeal.

In this opinion, we shall call the parties appellants and appellees unless otherwise designated.

Appellants say the chancellor was manifestly wrong in his holding on the merits and that, if not, he erroneously admitted certain items of testimony. We will deal with these questions in the order stated.

■■ ■ Appellants, as complainants, admittedly had the burden of showing such acts of adverse possession as would vest in them the legal title to the tract of land, especially so since they had no record title whatsoever. Smith, et al. v. Myrick, 201 Miss. 647, 29 So. 2d 924; Southern Naval Stores Company, Ltd. v. Price, et ux, 202 Miss. 116, 30 So. 2d 505; Page v. O'Neal, 207 Miss. 350, 42 So. 2d 391; Walker v. Polk, et al., 208 Miss. 389, 44 So. 2d 477; Caillouet v. Martin, 210 Miss. 632, 50 So. 2d 351. In Southern Naval Stores Company, supra, Price had no record title, and was claiming title by adverse possession, just as appellants are doing in the case at bar, and this Court described in these words the burden Price had to meet:

■■ ■ "Therefore, the burden was upon Price to show that he was vested with title by adverse possession to the disputed area. To do that, under Section 711, Code 1942, it was necessary for him to show that he alone, or he and his predecessors in title together, had had the actual, open, hostile, peaceable, exclusive, continuous possession of the land for ten years, under claim of ownership thereto." The opinion in Page v. O'Neal,

supra, pointed out the distinction in the burden resting upon claimant where he has record title and where he relies alone on acts of adverse possession. The Court said:

"He is here undertaking to assert title by adverse possession against the owner of the record title. Color of title, coupled with actual possession of a part of the land, constitutes constructive possession of the whole, and the adverse possession runs to the whole tract. Evans, et al. v. Shows, et al., 180 Miss. 518, 177 So. 786. Appellant, however, has no color of title, and his title by adverse possession, if any, runs only to such part of the land as was actually held by him in possession or enclosed or otherwise actually and continuously occupied by him for the statutory period of ten years."

See also Ball v. Martin, 217 Miss. 221, 63 So. 2d 833; Phares v. Farrar, 224 Miss. 737, 80 So. 2d 808.

And, before undertaking a discussion of the acts that appellants claim vested title in them, it may be of some aid, in appraising the weight of such acts and their efficiency in conveying notice to appellees, the record owners, to note what is at least an unusual situation. The original bill was filed by thirteen people. They consist of Mrs. Lydia Geoghegan and her children and the spouses of the married children, all adults. Later Wallace Harrison, as claimant under a mineral lease, was admitted as a complainant. Mrs. Lydia Geoghegan testified that she was claiming title to the lands for herself and her children. The children who testified said that they were not claiming any particular part or parcel of the tract, and they were not claiming as against each other or their mother. They said that they were claiming as heirs of their mother, although the mother was, of course, yet alive. This situation is important as bearing upon notice to the record owners of the property as to adverse claims. We do not find in the record one single act of adverse possession in which all of the appellants

took part. The outcome of this case does not require of us an evaluation of this situation as applied to the rights of the children to have title vested in them. It does bear upon the effect of their acts as exercising ownership over the land and in transmitting notice to the record owners. The situation just mentioned is at least unique. Kramer v. Moore, 212 Miss. 275, 54 So. 2d 405.

Now, as to the acts of adverse possession by appellants: They say they constructed and repaired some fences around the tract of land. There was proof to that effect. However, on the other hand, there was evidence to the effect that not half of the land had ever had a fence about its borders, and that the fences which existed were very old, witnesses say fifty years old; part of it was on the ground; that there were many and long gaps in the fence that did exist; that when it existed it was not on the boundary line of the tract in question; that the fences constructed or repaired by some of the individual appellants were not upon the property line between the tract in controversy and adjoining lands, most of which was owned by some of the appellants; and that the purpose of the newly constructed and repaired fences was to keep cattle upon the premises of those doing those acts and not for the purpose of enclosing the lands in controversy. In Snowden & McSweeney Company v. Hanley, et al., 195 Miss. 682, 16 So. 2d 24, this Court said: "When a fence, or a hedge-row, or the like, is relied upon to delineate the boundaries of the adverse claim the applicable rule is expressed in the latest text on the subject, 1 Am. Jur., pg. 870, wherein it is said that 'the question in such cases is whether the inclosure, like other acts of possession, is sufficient to fly the flag over the land and put the true owner upon notice that his land is held under an adverse claim of ownership.'" It was the province of the chancellor to give value and effect to the conflicting testimony as to the existence, repair and reconstruction of fences, and their location with reference to the lands in controversy.

■■ Appellants say that their cattle grazed upon the lands in controversy. There is testimony that that was done in varying numbers from time to time. However, it is shown that these were ''rough lands'', as some of the witnesses call them. They consisted, to considerable extent, of hills, hollows, and gulleys. A bayou ran through part of it. It was cutover woodland. None of it had ever been in cultivation, so far as we can gather from this record. As above stated, the tract did not have about it fences to keep cattle in or out. Cattle of others than appellants grazed upon the lands, especially during the winter season, when cattle in that vicinity ranged at large. It is not specifically shown that appellees knew cattle were grazing upon the lands, nor, if so, whose cattle they were, or that this was being done under a claim of right. Pasturage is, of course, of some value as bearing upon acquisition of title by adverse possession, but to vest title there must be strong supporting acts of other types and character. 2 C. J. S. 544, Section 23. In Cook v. Mason, 160 Miss. 811, 134 So. 139, this Court said: ''The pasture portion does not aid appellants, for there is no proof that the said portion was inclosed, and the great weight of authority is to the effect that pasturing, without inclosure, does not constitute adverse possession.''

Appellants say they executed conveyances pertaining to the lands which were acts of ownership and of adverse possession. In 1952 one of the appellants executed a mineral lease upon the lands in controversy. In June 1946, seven of the appellants executed a pipeline easement to the Interstate Oil Pipe Line Company across a portion of the lands in controversy. However, the other conveyances by some of appellants (in no case did all of the appellants execute the same conveyance) described lands other than those here involved, some of which stated that the described lands constituted all of the lands of the grantors owned in Jefferson County,

and some of these conveyances referred to the lands in controversy as the "Krauss" lands, and as bounding the lands specifically described.

Other acts indicating claim of ownership by appellants, or some of them,—such as warning people not to trespass upon the land, and not to cut and remove timber therefrom, and the placing by one of appellants of a posted sign at or near the boundary of the land, more or less visible from the public road—are shown in the evidence.

On behalf of appellees, the record discloses that in the year 1902 a controversy arose between the same parties hereto, or their predecessors in title, to the same land here involved, and appellees instituted in the Circuit Court of Jefferson County an unlawful entry and detainer proceeding against appellants. Judgment was rendered in favor of plaintiffs in that action. No appeal was taken from that judgment.

Again, at the October Term in 1926 of the Chancery Court of Jefferson County, that court rendered a decree, upon bill filed by the predecessor in title of appellees, and proof taken on the trial of the cause, adjudicating that complainant was the legal and equitable owner of the land in controversy "* * * under deed of purchase as well as under and by virtue of actual and adverse possession and occupancy thereof continuously for more than ten years next preceding the filing of the bill of complaint." The decree further adjudicated that the defendants in that cause, predecessors in title to appellants, had no right, title or claim, legal or equitable, to the lands, and it quieted the title thereto in complainant, predecessor in title to appellees.

It is further shown that appellees, or their predecessors in title, executed the following conveyances covering said lands:

In 1930 a timber deed to Uhl.

In 1941 a mineral lease to California Company.

In 1942 another mineral lease to California Company.

In 1945 a timber deed to Gooch.

In 1951 a timber deed to Harriston Hardwood Company.

In 1946 a pipeline easement to Interstate Oil Pipe Line Company.

The timber was cut and removed from the lands under the foregoing timber deeds. For instance, under the Uhl deed the cutting started in 1932 and ended in 1935. Mr. Pennington, in charge of the cutting and removal of the timber for Uhl, constructed a house on the lands in 1932, moved his family into the house, and remained therein until 1938.

In addition to the foregoing, although appellants claim they have owned the lands for the past fifty years, they have never paid a penny in taxes thereon. They admit that. The lands have been assessed to, and all taxes have been paid by, appellees, or their predecessors, since the decree of 1924, and apparently for many years prior thereto. The lands have never been assessed to appellants for taxes. While payment of taxes alone will not ripen a defective possession into title (Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660), yet it is a very weighty fact in support of such title, and especially is that true in this case involving such a large tract of land and such great length of time. In some states payment of taxes is a prerequisite to acquisition of title by adverse possession. 2 C. J. S. 745, Section 171.

It is difficult to understand how one, without even color of title, could establish in himself title by adverse possession to a tract of 764 acres of land, where for the past fifty years, the lands have been assessed to, and the taxes thereon have been paid by, one having the record title thereto, and the claimant for that period of time has never had the lands assessed to himself, or paid a penny in taxes thereon.

In our opinion the great weight of the evidence in this case supports the findings of the chancellor.

■■ We will now consider the question of the admissibility of certain evidence. Part of it consisted in the introduction of inter-office records of Harriston Hardwood Company purporting to show the amount of timber which had been cut and removed from the land under a contract of purchase with appellees. It is urged that the records were not properly identified by the person making the records. The chancellor reserved his ruling when this evidence was offered. He was not later requested to, and he did not again, rule upon the evidence. Under such circumstances the objection is waived. Holcomb, Inc. v. City of Clarksdale, 218 Miss. 176, 69 So. 2d 281.

■■ The other evidence was in the nature of a ledger sheet of the same company showing debits and credits between the Hardwood Company and three of the appellees growing out of the purchase of timber by the company from the appellees. It is not clear to us from the record what the final action of the court was, but the introduction of the sheet before the chancellor was harmless. The fact of the sale of the timber, not the exact amount paid therefor, was the important fact under the issues in this cause, and the fact of the sale was shown by other evidence and was not disputed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge* and *Gillespie, JJ.,* concur.