309 So.2d 526 (1975)
Leo KAYSER, Jr., Trustee for the Julius Moyse Estate
v.
D.M. DIXON, Jr., et al.
No. 47930.
Supreme Court of Mississippi.
March 17, 1975.
*527 Joe N. Pigott, McComb, Thomas F. Bergin, Charlottesville, Va., for appellant.
T.F. Badon, F.W. Stratton, Liberty, for appellees.
Before GILLESPIE, INZER and BROOM, JJ.
BROOM, Justice:
Adverse possession was the paramount aspect of this case tried in the Amite County Chancery Court. Appellees (complainants), D.M. Dixon, Jr., Mrs. Lillian Dixon, and Mrs. Virginia Dixon Marby, were decreed to be the owners of a tract of land (about nine acres) located to the west of a "white painted line" between their and appellant's lands. Also, a judgment for $2,291.49 was awarded appellees against appellant (and other defendants), as damages for the timber cut and removed from the appellees' land. We affirm.
The controlling issues are:
(1) Did the appellees adequately charge and prove their title based upon adverse possession?
(2) Should an independent survey have been required by the lower court to determine the boundary line between the properties?
Appellees in their bill sought cancellation of all claims of the defendant, Julius *528 Moyse Estate, to any right, title or interest in or to the tract of land described in the bill. The bill averred that complainants were the owners in fee simple of such land, having acquired title thereto by inheritance from D.M. Dixon, Sr. Complainants charged further that "they have good and valid title to said land under the theory of adverse possession" and "that their possession of said land has been open, peaceful, notorious, hostile and adverse to all the world, including the Defendants... ." It was charged that defendants, Julius Moyse Estate (appellant), Georgia Pacific Corporation and Ray Whittington, had crossed the surveyed and marked line dividing the appellees' and the Moyse Estate lands and had cut 149 pine trees and 35 hardwood trees of merchantable size. The bill set forth the total value of the trees cut as being $2,091.49, and damage to the reproduction stems was estimated at $200. Along with actual damages, the statutory penalty was also sought by the appellees but disallowed by the court.
As an affirmative defense, the appellant asserted that the dividing line between the complainants' property and its property was the line which "was surveyed, blazed and painted by Harry Larsen in the year 1954 and repainted in 1959 and again in 1968 ... and that the said line ... was the accepted section line." Appellant denied that the complainants had acquired title to the land by adverse possession or that any of appellant's agents had entered upon complainants' land and cut and carried off timber from such land. In a crossbill appellant sought damages from the appellees for trespass upon appellant's land and the issuance of a permanent injunction restraining appellees from further trespassing.
Defendants, Georgia Pacific Corporation and Ray Whittington, filed separate answers, and have not appealed.

I.
Counsel for appellant, in his scholarly brief and oral argument, argues that the appellees' naked possession (without color of title) of the disputed lands relied upon was mere scrambled possession, and so lacking in qualities of actual exclusive occupancy and open possession that it could not ripen into good and valid title. Careful study of the record causes us to conclude that the proof adduced by the appellees is sufficient without color of title. It is undisputed that two previous surveys sought to determine the boundary between the Dixon and Moyse lands, both of which referred to different government corners (double corners). One survey was done by A. Farrah in 1955 and is now known as the "white line" or the Farrah line, which was brushed out and maintained as a section line, and painted white in 1971. The other line (surveyed by H. Larsen in 1954) was painted orange in 1955, and repainted in 1959 and 1968. In 1963 the timber between the orange and white lines was marked with blue paint to signify that it was not to be cut as part of the Moyse Estate timber authorized to be cut that year. Of considerable significance is the fact that when timber was cut on appellant's (Moyse Estate) lands in 1963, the cutting did not extend west of the white line or upon the land in controversy. The timber which had previously been marked blue was marked with red paint in 1971 to signify again that the timber was not to be cut. Nevertheless, the timber was cut.
Property belonging to another may be (without color of title) acquired by occupancy which is actual, adverse, hostile, exclusive, peaceful, uninterrupted, and continuous, under claim of ownership, open, notorious, and visible for the statutory period of ten years. Berry v. Houston, 195 So.2d 515 (Miss. 1967); Southern Naval Stores Co. v. Price, 202 Miss. 116, 30 So.2d 505 (1947); Miss. Code Ann. § 15-1-13 (1972). A litigant relying upon adverse possession has the burden of proof and must establish occupation, either actual or constructive, and a claim of ownership. As a general rule, either actual or constructive occupation, cultivation or residence or use is necessary to constitute adverse *529 possession. Cook v. Mason, 160 Miss. 811, 134 So. 139 (1931). However, such occupancy and use is not as rigidly or literally required in order to establish a claim of adverse possession for land which does not lend itself to permanent, useful improvement. Possession of such property may be established by a continued claim evidenced by public acts of ownership. Geoghegan v. Krauss, 228 Miss. 231, 87 So.2d 461 (1956); Broadus v. Hickman, 210 Miss. 885, 50 So.2d 717 (1951); McCaughn v. Young, 85 Miss. 277, 37 So. 839 (1904). As held in McCaughn, (though the land here may not be so "wild" as there), an important question is whether the person claiming adversely exercises toward the land "the same character of control" applied toward "property actually his and which he would not have exercised over property which did not belong to him." We think the appellees exercised such control.
The evidence established that the appellees hold record title to land adjacent to a government section line which they claim was the same line surveyed, brushed out and maintained by them for well over ten years, and painted white in 1971. Appellees' witnesses testified that the best use of the property was for the production of forest products. Appellees did the following acts on the disputed land during the statutory period: cut and carried posts off the land, thinned the hardwood, grazed cattle annually, and maintained posted signs near the white line at road entrances. Additionally, D.M. Dixon, Jr. stated that he was preserving the merchantable pines in the area. Dixon further testified that he, through his attorney, wrote a letter to appellant in 1963 claiming the disputed land. The attorney's letter in effect warned appellant against further attempts to use the land between the white and orange lines and mentioned a "lawsuit" about the matter.
In 1963 and in 1971-72 the Moyse Estate authorized two separate companies to cut timber off the Moyse Estate. Employees of the Crosby Lumber Company were told in 1963 to cut only to the white line and not beyond it, and no timber was cut at that time beyond the white line. The timber between the orange and white lines was painted blue in 1963 to signify that it was not to be cut.
In 1971-72 the Georgia Pacific Corporation, previously authorized to cut timber on the Moyse Estate, was advised by counsel that a boundary dispute existed between the Moyse Estate and the Dixons. After some negotiations with the Resource Management Service, acting for the Moyse Estate, the timber between the orange and white lines was subtracted from the contract and the timber was painted red over blue to signify that it was not to be cut by Georgia Pacific. The timber, however, was cut, and Georgia Pacific Corporation subsequently paid for the timber. Ray Whittington, the independent contractor for Georgia Pacific, testified that he had authorized his men to stop cutting in the disputed area after he was notified that there were two lines there. The area, however, was cut while Whittington was away from the property.
One whose land has placed upon it by another (without the consent of the owner) a "brushed out" line, and posted signs at road entrances, and whose land is grazed annually by cattle of such adverse claimant, should take some appropriate action to stop the running of the ten year adverse possession statute. Miss. Code Ann. § 15-1-13 (1972). Such events occurred here, and additionally the appellees' attorney advised appellant in writing in 1963 that appellees claimed the lands in dispute. Yet appellant took no action and substantial evidence shows that the appellees publicly exercised dominion over the land for more than ten years as owner, during which time appellant acquiesced. When its agents cut timber on appellant's adjacent lands, they cut only up to the line claimed by appellees. About the only thing appellant did upon the land during the ten year period (other than occasionally walking on *530 it) was to paint a so-called line which he considered to be the true line. This did not toll the statute. It follows that upon the proof before him, the chancellor was warranted in determining that the appellees, without color of title, had acquired title to the disputed area of forest land through adverse possession evidenced by facts related by appellees' witnesses.

II.
Next, appellant argues that the chancellor erred in not requiring an independent survey of the area and in allowing proof of adverse possession because of the alleged failure of the complainants' bill to adequately allege the adverse possession of appellant's land.
Whether or not an independent survey of disputed land should be made is largely within the discretion of the trial court. Cohn v. Pearl River Lbr. Co., 80 Miss. 649, 32 So. 292 (1902). Abuse of that discretion is not shown here, and, therefore, the court has no basis upon which to rule that the chancellor erred in not requiring the independent survey.
As to the issue of whether complainant adequately alleged the claim of adverse possession, we note that appellant did not object to the introduction of evidence regarding appellees' adverse possession of the land for the statutory period. Had such an objection been made, appellees would have been permitted to amend the bill of complaint to conform with the proof. Downes v. Crosby Chem. Co., 234 So.2d 916 (Miss. 1970). Appellant's failure to object at the trial level precludes the subsequent objection at the appellate level.
While the case is not as strong as some others in which we upheld titles based upon adverse possession we cannot say that adverse possession was not established by appellees as found by the chancellor. His finding that the evidence was "sufficient to wave the flag of adverse possession and put the Moyse on notice of what the Dixons were claiming" was supported by substantial evidence. The decree appealed from was consistent with applicable legal principles and must be upheld.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.