385 So.2d 1293 (1980)
FLORIDA GAS EXPLORATION COMPANY et al.
v.
J.C. SEARCY et al.
No. 51821.
Supreme Court of Mississippi.
May 7, 1980.
Rehearing Denied August 6, 1980.
Heidelberg, Woodliff & Franks, Luther M. Thompson, Kenneth I. Franks, Jackson, for appellants.
Craig Castle, Jackson, Jos. Dale, Prentiss, for appellees.
Before ROBERTSON, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
J.C. Searcy, Jr., Searcy Enterprises, and Montego Petroleum filed suit in the Chancery Court of Jefferson Davis County against Tomlinson Interests, Inc., Watson Oil Corporation, Florida Gas Exploration Company, and First Mississippi Corporation seeking to reform a warranty deed executed by W.C. McLeod to Vester Thompson, appellants' predecessor in title, as to a one-fourth (1/4) mineral interest in an 80-acre tract of land in Jefferson Davis County, and to remove clouds on the title as to the said mineral interest. The trial court ordered the deed to be reformed to reflect that W.C. McLeod was vested with an *1294 undivided one-fourth (1/4) interest in said minerals, intended to be reserved in the deed instrument, and the defendants appeal.
The Federal Land Bank of New Orleans acquired title to the 80-acre tract involved, described as "the east half (1/2) of the northeast quarter of Section 10, Township 6 North, Range 17 West, Jefferson Davis County, Mississippi" on January 6, 1933 after foreclosing a deed of trust. At the time of the foreclosure, an undivided one-eighth (1/8) mineral interest had been reserved by J.J. Newman Lumber Company, a previous owner, in the northeast quarter (NE 1/4) of the northeast quarter (NE 1/4) of said tract. Subsequently, the Federal Land Bank conveyed the 80-acre tract to W.C. McLeod, reserving an undivided one-half (1/2) of the minerals. In 1952, McLeod conveyed the 80-acre tract to Vester Thompson by warranty deed, which instrument contained the following reservation: "1/4 interest in all minerals and oil is reserved to the grantor."
The deed was prepared by the Mayor of the City of Bassfield, who was unskilled in drawing such instruments, and it was recorded on October 21, 1952.
Vester Thompson executed a deed of trust in January, 1957, to the Federal Land Bank, covering the 80-acre tract of land. The deed of trust recited that the instrument was subject to a reservation by W.C. McLeod of one-fourth (1/4) of all the minerals, subject to a reservation by the Federal Land Bank of one-half (1/2) of all the minerals and was subject to a reservation by J.J. Newman Lumber Company of 1/8 of all the minerals in he NE 1/4 of the NE 1/4. That deed of trust was duly recorded and eventually was cancelled in March, 1972.
In May, 1957, one B.F. Banahan contacted Vester Thompson for the purpose of acquiring an oil, gas and mineral lease from him on the tract. Thompson told Banahan that he owned only an undivided one-fourth (1/4) mineral interest in the property. Banahan again checked the records, and then returned and told Thompson that he (Thompson) owned a one-half (1/2) interest in the minerals and that the McLeod heirs did not own any interest therein. Thompson executed a ten-year oil, gas and mineral lease on the land in question, purportedly covering an undivided one-half (1/2) mineral interest. Several days after the execution of the lease, Trudie Hawkins, a child and heir-at-law of W.C. McLeod, asked Thompson why the children of McLeod had not been approached about leasing the property and Thompson replied that he had been told by Banahan that he, Thompson, was the owner of a 1/2 interest in the minerals and that the McLeod heirs did not own any interest therein. Although there was some discussion about the matter involving the McLeod heirs, no action was taken to determine the ownership of the 1/4 mineral interest in question.
In 1971, Vester Thompson and his wife executed an oil, gas and mineral lease, covering the land, to R.H. Sims. The lease did not specify the particular interest owned by Thompson, and was subsequently assigned to the appellants, who claim through said instrument. Thompson executed a ratification and rental division order. In October, 1971 which provided for the payment of one dollar ($1.00) per acre per year under the lease, aggregating delayed rentals of forty dollars ($40.00) per year.
Appellee J.C. Searcy acquired oil, gas and mineral leases in 1974 from the heirs of W.C. McLeod on the 80-acre tract of land. Searcy and the appellees now claim all mineral interests owned by the heirs of McLeod.
Vester Thompson executed an instrument entitled "Agreement Amendment and Release" on June 3, 1974, for a consideration of six thousand dollars ($6,000), and conveyed an undivided one-fourth (1/4) mineral interest in the 80-acre tract to the heirs of McLeod. The instrument recited that it was executed to recognize the mutual mistake made in the September 18, 1952 deed from McLeod to Thompson, which did not properly reserve the undivided 1/4 interest in minerals, and it recited that when McLeod agreed to convey to Thompson the 80-acre tract, McLeod intended to reserve for himself an undivided 1/4 mineral interest in the *1295 property. The instrument recognized the reservation and was for the purpose of reforming the original deed to reflect that McLeod intended to reserve a 1/4 mineral interest over and above any interest previously reserved by the Federal Land Bank.
In June, 1974, the McLeod heirs executed an instrument styled "Conditional Assignment of Royalty Interest" in favor of appellee Searcy. The instrument conveyed the mineral interests acquired by them under the June 3, 1974 instrument executed by Thompson. It was executed in order to protect appellee Searcy in the event a competent court determined the leases he held on the property were not valid. Afterwards, in 1976, by three separate mineral deeds, the McLeod heirs conveyed all mineral interests owned by them in the land to one Cummings, who thereafter conveyed the same to appellee Searcy. He, in turn, conveyed to the other appellees. They are the successors in interest of the McLeod heirs and this action arose against the successors in interest of Thompson.

I.
Should this Court overrule and change the opinion in Searcy et al. v. Tomlinson Interests, Inc., et al., 358 So.2d 373 (Miss. 1978)?
When the bill of complaint was filed in this cause, a demurrer was interposed by the appellant and was sustained by the trial court. That bill of complaint was dismissed and the cause came to this Court under the above style and was reversed and remanded for trial on the merits. The principal question raised by the demurrer was a bar of the action by the statute of limitations.
The appellants argue that Searcy v. Tomlinson was palpably erroneous and that it should be overruled now, following Brewer v. Browning, 115 Miss. 358, 76 So. 267 (1917). The Brewer court stated:
"We think the rule of `the law of the case' is a good rule of practice, and should be followed, except in rare cases where the decision is manifestly and palpably erroneous and to follow it would result in grave injustice being done." 115 Miss. at 366, 76 So. at 270.
In Mississippi College v. May, 241 Miss. 359, 128 So.2d 557 (1961), the Court said:
"The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure. 21 C.J.S., Courts, Sec. 195; 30A Am.Jur., Judgments, Sec. 331; Goldsby v. State, 240 Miss. 647, 123 So.2d 429, 434 (1960).
Appellants seek on this appeal to reopen the same issues which the Court has already decided in the first appeal. This we refuse to do for two reasons, because the original decision was correct, and because it is the law of the case." 241 Miss. at 366, 128 So. at 558.
See also Holcomb v. McClure, 217 Miss. 617, 64 So.2d 689 (1953).
We reject the argument of appellants on this question and decline to reopen the same issues which the Court decided on the first appeal of this case.

II.
Did the lower court err in reforming the McLeod-Thompson deed?
The appellants contend that (1) they are innocent purchasers for value without notice, (2) that the deed of trust containing the recitals to the effect that McLeod owned an undivided 1/4 interest in minerals is not in the chain of title and constitutes no notice, and is not an essential link in the chain of title, and (3) does not refer to a definite instrument at a specific book and page and constitutes no notice.
The deed of trust executed by Vester Thompson January 21, 1957, to the Federal *1296 Land Bank of New Orleans, wherein it was recited that McLeod owned an undivided 1/4 interest in the oil, gas and minerals on said tract, was in effect in 1971 when the lease under which appellants claim was obtained. The rule regarding notice was stated in Dead River Fishing & Hunting Club v. Stovall, 147 Miss. 385, 113 So. 336 (1927):
"A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor  either immediately or remote  if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation." 147 Miss. at 395-396, 113 So. at 337-338.
See also Sun Oil Company v. Broadhead, 323 So.2d 95 (Miss. 1975); Sunnybrook Children's Home, Inc. v. Dahlem, 265 So.2d 921 (Miss. 1972); and Smalley v. Rogers, 232 Miss. 705, 100 So.2d 118 (1958).
In Sunnybrook, this Court said:
"We have recognized the right to reform instruments not only against the original parties and their privies, but also against purchasers from them with notice of their rights. In Russell et al. v. Scarborough et al., 155 Miss. 508, 124 So. 648 (1929) this Court stated:
Reformation of a deed will be allowed not only as against the original parties and their privies, but also against purchasers from them with notice of their rights. 23 R.C.L. 339, 340, § 33. (155 Miss. at 511, 124 So. at 649.)" 265 So.2d at 925.
Arguments (2) and (3) herein are answered in Burkett v. Peoples Bank of Biloxi, 225 Miss. 291, 83 So.2d 185, 83 So.2d 763 (1955). There, a first and second deed of trust were given by Gulf Coast Manufacturing Co., Inc. one year apart. In both instruments the property was described incorrectly. However, the property was identified as being "known as building for the Gulf Coast Manufacturing Company, which business is engaged in the manufacture of caskets." One year after the second deed of trust was executed, the casket company borrowed additional funds and gave a third deed of trust to one Andy Page, which correctly described the lands and contained a recital to the following effect:
"`Subject, however, to those two certain deeds of trust executed by the grantor herein to the Peoples Bank of Biloxi, Mississippi, beneficiary, and of record in the office of the Chancery Clerk of Jackson County, Mississippi'." 225 Miss. at 296, 83 So.2d at 187.
All three deeds of trust were acknowledged and recorded. The company property was sold under execution of a judgment and was purchased at the execution sale by Burkett. She claimed that she had no notice of the first two deeds of trust and that she bought free of liens arising therefrom. This Court noted that the description in the first two deeds of trust was defective, but that the whole description was such as to reasonably enable creditors of subsequent purchasers to find the land. As to the recitals in the third deed of trust, the Court said:
"When Mid-South Funeral Supply, Inc., obtained and enrolled its judgment, there was of record the deed of trust given by Gulf Coast Manufacturing Company, Inc., to Andy Page, and this deed of trust was regular in every respect and contained a perfect description of the property here involved. Creditors and subsequent purchasers had constructive notice of this deed of trust and all recitals therein contained, including the provision, `subject, however, to those two certain deeds of trust executed by the grantor herein to the Peoples Bank of Biloxi, Mississippi, beneficiary, and of record in the office of *1297 the Chancery Clerk of Jackson County, Mississippi.' The two deeds of trust held by appellee were of record and the recital in the Page deed of trust gave notice that they were of record and readily available. We held in Dead River Fishing Club v. Stovall, 147 Miss. 385, 113 So. 336, that a purchaser of land is charged with notice of every statement made in the various conveyances constituting his chain of title, and all deeds and conveyances previously executed by his grantor, if such deeds or conveyances in any way affect his title; and if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could or would be disclosed by a diligent and careful investigation.
This was reaffirmed in Adams et ux. v. Hill et ux., 208 Miss. 341, 44 So.2d 457. We need not proceed to the limits of the rule laid down in the two cases just mentioned in order to hold that the recitals contained in the Andy Page deed of trust were sufficient to charge the judgment creditor in this case with constructive notice of appellee's two deeds of trust. The recital in the Andy Page deed of trust was sufficient within itself to give notice of the existence of the deeds of trust held by appellee. The recital gave notice of the ultimate fact of the existence of appellee's deeds of trust without inquiry or investigation. The judgment creditor did not need to make further inquiry or investigation unless it was desired to learn the particulars of the deeds of trust referred to, which particulars were easily ascertainable from the deeds of trust themselves, which were of record, and to which record reference was made in the recital contained in the Andy Page deed of trust. We hold, therefore, that the recital in the Andy Page deed of trust was sufficient to charge Mid South Funeral Supply, Inc., with constructive notice of the existence of appellee's two deeds of trust. It follows that the judgment lien was subject and inferior to the liens of the appellee's deeds of trust." 225 Miss. at 298-300, 83 So.2d at 188-189.
The recitals in the deed of trust from Vester Thompson to the Federal Land Bank follow:
"Subject to a reservation by W.C. McLeod of one-fourth of all minerals as shown by Book 61, Page 314;
Also subject to a reservation by the Federal Land Bank of one-half of all minerals as shown by Book 43, Page 308.
Subject, also, to a reservation by J.J. Newman Lumber Company of one-eighth of all minerals as shown by Book 9, Page 141 of the northeast quarter of northeast quarter."
In addition to the documentary evidence, which serves as constructive notice to appellants of the true McLeod mineral interest, Thompson made the statement to Banahan that he only owned a 1/4 interest in minerals, and Thompson testified that the intention and agreement between him and McLeod was that McLeod would retain a one-fourth (1/4) mineral interest for himself and Thompson would receive a one-fourth (1/4) mineral interest in the property involved. He also testified that he had always recognized that McLeod owned a 1/4 mineral interest.
The chancellor found that appellants were not innocent purchasers for value and that the deed should be reformed to reflect the true mineral interest of McLeod. We cannot say that he was manifestly wrong.

III.
Did the trial court err in failing to find that Thompson, appellant's predecessor in title, acquired ownership to the disputed one-fourth (1/4) mineral interest by adverse possession pursuant to Mississippi Code Annotated Section 15-1-13 (1972)?
Title by adverse possession requires hostile, actual, open, notorious, exclusive and continuous occupancy for the statutory period of ten (10) years. McCaughn v. Young, 85 Miss. 277, 37 So. 839 (1904). The evidence indicates that Thompson entered into possession of the 80-acre tract *1298 under the impression that he owned only 1/4 of the minerals, that he executed a security interest in 1957 which gave record notice of his admission against interest and his recognition of the McLeod 1/4 mineral interest, that he gave actual notice to Banahan in 1957 he owned only 1/4 interest in the minerals, and that he admitted in the settlement agreement of 1974 a mutual mistake occurred in 1952 and he had never had actual or constructive possession of the McLeod 1/4 mineral interest. The chancellor correctly found that appellants failed to meet the burden of proving their affirmative defense of adverse possession.
We have carefully considered the remaining assignments of error and find that they are without merit. For the reasons stated, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.