George T. HOUSTON, III and Ruth H. Jarvis Baker, Plaintiffs-Appellees,

v.

UNITED STATES GYPSUM COMPANY, Defendant-Appellant.

No. 79–3120.

United States Court of Appeals, Fifth Circuit.
Unit A

Aug. 3, 1981.

Rehearing Denied Oct. 20, 1981.

James S. Gilliland, Memphis, Tenn., Melburn E. Laundry, U. S. Gypsum Co., Chicago, Ill., for defendant-appellant.

Frank E. Everett, Jackson, Miss., for plaintiffs-appellees.

Before CHARLES CLARK and RANDALL, Circuit Judges, and SHARP *, District Judge.

CHARLES CLARK, Circuit Judge:

This is a Mississippi adverse possession case on appeal from proceedings held following a remand from this court, 569 F.2d 880. At issue is title to wild, undeveloped accretion property on the southern tip of Stack Island in the Mississippi River. The plaintiffs, George T. Houston, III, and his

* District Judge of the Northern District of Indiana, sitting by designation.

sister Ruth Houston Jarvis Baker, are record owners of Stack Island proper. The defendant, United Stated Gypsum Company, owns the accretion property which is the subject of this litigation. The district court held that the Houstons had acquired title to the island accretions by adverse possession. We affirm.

## I.

Most of the facts pertinent to this appeal are uncontested. Stack Island lies in the Mississippi River west of the main river channel but east of the Louisiana-Mississippi state line. It is located in Issaquena County, Mississippi, near Lake Providence in East Carroll Parish, Louisiana.

The Houstons are successors in a chain of title to the island reaching back to an 1881 patent from the United States to a private purchaser, Stephen B. Blackwell. In 1938 Blackwell's successors in interest conveyed the property to the Houstons' grandfather by a deed containing the following description of the property:

> Section Twenty-Seven (27), Township Eleven (11), Range Nine (9), containing One Thousand (1000) acres, more or less, *together with all the accretions or additions thereto*, being what is commonly known as Stack Island .... (Emphasis supplied.)

By 1953 George Houston had acquired title to a three-fourth interest in Stack Island, and Ruth Jarvis Baker had acquired a one-fourth interest. Each of the intervening instruments of conveyance recite words of description identical or substantially similar to that contained in the 1938 deed, including the emphasized language concerning accretions.

The United States Gypsum Company has owned a large tract of land in Issaquena County since 1950. Gypsum's property, referred to as Shipland Plantation, is situated on the east bank of the main Mississippi River channel across the river from East Carroll Parish, Louisiana. The 1950 deed conveyed to Gypsum the Shipland Plantation lands along with "all accretions and batture lands adjoining or in any way connected with the above described land ... and any islands located between the above described lands [and] the Louisiana-Mississippi state line ...."

The disputed property consists of approximately 1000 acres of marshy land located on the southern tip of Stack Island proper. This land was formed by accretion since 1925, the divided flow of the river gradually eroding the northern end of the island and depositing alluvion on the southern end. That slow, downstream growth eventually extended the island southward so that part of it reached below the western extension of the northern boundary to Gypsum's Shipland Plantation property on the Mississippi shore. In fact, by 1962 more of the island was located south of Gypsum's extended northern property line than was located north of it.

The land in controversy is extremely wild. It is not susceptible to habitation, improvement, or cultivation and never has been fenced effectively. It is subject to frequent annual flooding and is completely covered by water for about three to five months each year. This wild, marshy land is primarily valuable for growing timber, grazing livestock, and hunting.

The controversy out of which this lawsuit arises occurred in 1972 when Gypsum cut 856 cords of willow from the southern end of Stack Island. The Houstons brought this action the following year in order to quiet title to the land and recover the value of the cut timber. The Houstons based their claim on two alternative theories: that they held title to the southern portion of Stack Island because island accretions belong to the island owner regardless of how far they may extend or, if Gypsum owned the accretion property, that they had acquired title to the land by virtue of their adverse possession for more than the statutory ten-year period. The district court rejected both theories. It held Gypsum owned the disputed property because title to accretions originally formed on island property belonging to one owner does not cover the accretions after they reach beyond the property line of another riparian owner. It also decided the

Houstons had not discharged their burden of proving adverse possession.

On appeal, a panel of this court affirmed the district court's holding that Gypsum owned the accretion property on the south end of Stack Island but vacated that part of its judgment relating to the adverse possession claim. *See Houston v. United States Gypsum Co.*, 569 F.2d 880 (5th Cir. 1978). After reviewing the evidence of the Houstons' possessory conduct, this court observed, "All this boils down to the inescapable fact that the adverse possession issue was just about as close as it could be." 569 F.2d at 886. However, because the district court had not satisfactorily explicated its decision under *Broadus v. Hickman*, 210 Miss. 885, 50 So.2d 717 (1951), and *McCaughn v. Young*, 85 Miss. 277, 37 So. 839 (1905), this court remanded for further consideration of whether the Houstons' conduct was sufficient to ripen title in them, expressly permitting both parties to supplement the existing record. 569 F.2d at 887.

The district court then heard further testimony and received additional documentary evidence concerning the nature, quality, and duration of the Houstons' possession. After a two-day trial, the district court reversed itself and entered judgment for the Houstons, awarding them title to all the disputed accretion property along with $2,996.00 damages for the timber cut by Gypsum in 1972. However, the district court made very few specific factual determinations, and most of those it did make relate only to preliminary or peripheral issues.

The record contains substantial evidence of possessory acts by the Houstons which the district judge must have believed to reach his ultimate conclusion favorable to them. Indeed, with but one exception, Gypsum does not quarrel with what events took place so much as the legal significance of those events.

In particular, the evidence shows that the Houstons have engaged in a pattern of proprietary acts during the twenty or more years preceding their initiating this lawsuit. They have blazed trees, painted boundaries, and posted the island at irregular intervals since 1950, although seasonal flooding of the island and trespassing hunters have often removed any signs they posted. Since 1952 Mr. Houston and employees under his supervision have planted tree sprigs and seedlings on the disputed property, and since 1957 Houston has substantially increased his reforestation efforts using sprigs acquired from the Mississippi Forestry Commission.

The disputed property also has been under a succession of livestock grazing leases from 1957 to 1971, Houston having executed such leases in 1957, 1958, and 1962. Under these grazing leases, Houston's lessees have grazed cattle, goats, and other livestock; marked and maintained boundary lines designated by Houston; and erected fences as deemed necessary.

Furthermore, the record reveals that Houston has personally hunted for deer and duck on the entire island several times each hunting season and has granted written hunting leases covering the disputed property in 1967 and 1970. The lessee under the 1970 lease has formed a hunting club comprised of 20–30 members who cleared trails, planted wheat fields and constructed deer stands, posted four-by-six-foot signs, and hunted on the island every day of each hunting season. Houston has also published newspaper notices prohibiting hunting on the island and taken other steps calculated to limit hunters to persons he selects.

In addition to this pattern of possessory conduct, the Houstons have performed several important individual acts of ownership. In 1954 they executed an oil, gas, and mineral lease which purported to cover Stack Island and "all accretions and riparian rights adjoining or belonging to any part" of it. In 1968 they obtained a decree from the Chancery Court of Issaquena County, Mississippi, against certain adverse claimants in order to remove any clouds on their title to Stack Island. Gypsum was not made a party to this action, was not served, and is not covered by the decree.

More importantly, the Houstons had a direct confrontation with the United States

Gypsum Company. In late 1957 Hurricane Audrey blew down some timber on the southern portion of Stack Island. Thinking this timber would be useful for pulpwood, Houston went to Gypsum's Greenville, Mississippi, office and attempted to sell it to Gypsum. Gypsum refused, claiming that it owned the south end of the island and the timber on it. Gypsum then reported the episode to its home office in Chicago, Illinois.

This incident also provoked an exchange of correspondence between lawyers for Houston and for Gypsum. On October 24, 1957, Gypsum sent to Houston's attorney a map on which it had outlined in red ink all the land claimed by it. After consulting with Houston, his attorney returned the map with the land claimed by Houston marked in blue ink. The area encircled by Houston includes all of the property which is the subject of this litigation. After this round of correspondence, the parties had no further dealings with one another until 1972 when Gypsum began cutting timber from the disputed property.

The district court did make one specific factual finding of some significance. It found that the Issaquena County tax assessor had assessed the disputed property to the Houstons from 1955 to 1973 and that they had paid taxes on the property for each of those years except 1961. Gypsum vigorously attacks this finding. It points to its own records of tax assessments and payments and urges that it has paid the property taxes on the Stack Island accretions since it acquired title to Shipland Plantation.

However, the pertinent Issaquena County tax records are ambiguous. The property descriptions contained in them are not sufficiently detailed to permit a certain determination of whether the Houstons, Gypsum, or both have paid property taxes on the southern accretions to Stack Island. In any event, it is clear that in 1958 the Houstons had the county tax assessor increase the acreage assessment for Stack Island, apparently to reflect the changes caused by the accretion to the island.

On the basis of this evidence, the district court decided that the Houstons had acquired title to all of the accretion property on the southern end of Stack Island. Even after the supplemental proceedings held on remand, the prior panel's characterization of the adverse possession issue as being "just about as close as it could be" is still apt. Nevertheless, under the applicable law of Mississippi, the record is clear enough to support the district court's determination to award title to the disputed property to the Houstons by adverse possession.

## II.

The Mississippi doctrine of adverse possession is codified in section 15–1–13 of the Mississippi Code of 1972. The pertinent part of that provision reads as follows:

> Ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly, continued for ten years by occupancy, descent, conveyance, or other ... shall vest in every actual occupant or possessor of such land a full and complete title
> . . . .

Miss.Code Ann. § 15–1–13. (1972). Case law has established six essential elements necessary to constitute an effective adverse possession claim: the possession must be (1) hostile and under claim of right; (2) actual; (3) open, notorious, and visible; (4) exclusive; (5) continuous and uninterrupted; and (6) peaceful. *See e. g., Florida Gas Exploration Co. v. Searcy*, 385 So.2d 1293, 1297 (Miss.1980); *Cole v. Burleson*, 375 So.2d 1046, 1048 (Miss.1979); *Kayser v. Dixon*, 309 So.2d 526, 528–29 (Miss.1975).

First, Gypsum claims that the possessory acts undertaken by the Houstons are too fleeting and transitory to establish the kind of control and dominion over the accretion property necessary to satisfy the actual possession element. Gypsum emphasizes that the Houstons never did anything to change the character of the disputed property: they never made any substantial improvement or alterations, cut any timber, maintained any fences, or performed any cultivation.

■ This argument is without merit. To acquire title to land by adverse possession, a possessor must ordinarily exercise the usual acts of ownership such as making useful improvements, continuously residing on the land, cutting timber, cultivating the soil, or otherwise using the land in the way a reasonable landowner would his property. *See, e. g., Rotenberry v. Arnold*, 212 Miss. 564, 55 So.2d 141 (1951); *Gathings v. Miller*, 76 Miss. 541, 24 So. 964 (1899). *See generally* III American Law of Property § 15.3 (1952). Maintenance of fences or other inclosures may be an important indication of the physical control which is necessary for actual possession, *see, e. g., Cole v. Burleson*, 375 So.2d at 1049; *Grayson v. Robinson*, 240 Miss. 59, 63, 126 So.2d 247, 249 (1961), but fencing is not a prerequisite to a successful adverse possession claim. *See Snowden & McSweeny Co. v. Hanley*, 195 Miss. 682, 685, 16 So.2d 24, 25 (1943).

■ The character of the disputed property is always crucial in determining what degree of control and what character of possession is required to establish adverse possession. Thus, wild and undeveloped land that is not readily susceptible to habitation, cultivation, or improvement does not require the same quality of possession as residential or arable land, since the usual acts of ownership are impossible or unreasonable. The Mississippi Supreme Court has explained the rule governing wild lands in the following terms:

> The true doctrine, and the one now generally recognized, is . . . 'That neither actual occupation, cultivation, or residence are necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement . . . .'

*McCaughn v. Young*, 85 Miss. 277 at 292, 37 So. 839 at 842 (citations omitted). *See Kayser v. Dixon*, 309 So.2d at 529; *Broadus v. Hickman*, 210 Miss. 885 at 892–93, 50 So.2d 717 at 719–20. The fundamental inquiry, however, remains the same: "Did the person claiming to hold adversely exercise towards the property the same character of control which he used toward property actually his, and which he would not have used over property which did not belong to him?" *McCaughn v. Young*, 85 Miss. at 292, 37 So.2d at 842. *See Kayser v. Dixon*, 309 So.2d at 529; *Broadus v. Hickman*, 210 Miss. at 893, 50 So.2d at 720.

■ The Houstons' actions, which the district court impliedly accepted, have satisfied this test. The accretion property on the southern end of Stack Island is uninhabitable, not suitable for cultivation, and not adaptable for permanent useful improvement. Yet, at all times since at least 1957, the Houstons have consistently acted as if all of Stack Island, including the accretions at issue here, belonged to them and have performed the kind of possessory acts which are consistent with the character of this Stack Island property. They have posted the island and marked its boundaries, planted tree sprigs and seedlings, executed hunting and grazing leases, brought an action to quiet title, hunted on the island, attempted to sell timber off the island, and increased the acreage assessment for property taxes. Although they have never cut any timber from the land, Gypsum's own proof showed that there was no merchantable timber on the disputed property until 1972 when it began the cutting which precipitated this lawsuit. In short, the Houstons have done with the land all that a reasonable owner would have done and have used the land for every purpose for which it was reasonably adapted. Because this possession continued uninterruptedly for more than ten years after 1957, it is enough to extinguish Gypsum's rights in the property.

■ Second, Gypsum maintains that the Houstons cannot take advantage of the *Broadus* and *McCaughn* rule governing adverse possession of wild land without also having color of title. Whatever force this argument may have in some future case, it has no bearing on the present one. Color of title is an instrument of conveyance or a record which appears to convey title but which in fact does not have that legal effect. *See, e. g., Cranford v. Hilburn*, 245 Miss. 269, 275, 147 So.2d 309, 312 (1962);

*Shepherd v. Cox,* 191 Miss. 715, 731, 4 So.2d 217, 217 (1941). Thus, for example, an adverse possessor may claim under the color of title of a defective or imperfect instrument, even though his grantor or a predecessor was entirely without title or interest. *Lambert v. State,* 211 Miss. 129, 149, 51 So.2d 201, 209 (1951) (quitclaim deed). Thus, it is clear that the Houstons took possession of the disputed property under color of title. Each instrument of conveyance in their chain of title purports to transfer an interest in the "accretions and additions" as well as in Stack Island proper. Even though those deeds were not effective to transfer such an interest in accretions once they extended below the western extension of Gypsum's Shipland Plantation northern boundary, they are enough to constitute color of title. Gypsum's argument, therefore, is irrelevant to the case at hand.

Third, Gypsum insists that the Houstons cannot extinguish its rights in the Stack Island accretion property without proving that they have paid the taxes on it. In *Geoghegan v. Krauss,* 228 Miss. 231, 242, 87 So.2d 461, 465 (1965), the Mississippi Supreme Court called the payment of taxes a "very weighty fact" in support of an adverse possession claim. It then went on to say,

> It is difficult to understand how one, without even color of title, could establish in himself title by adverse possession to a tract of 764 acres of land, where for the past fifty years, the lands have been assessed to, and the taxes thereon have been paid by, one having the record title thereto, and the claimant for that period of time has never had the lands assessed to himself, or paid a penny in taxes thereon.

*Id.,* 87 So.2d at 465. Other Mississippi decisions illustrate that payment of taxes may be a crucial element of proof for one attempting to establish title in himself by adverse possession. *See, e. g., Woodall v. Ross,* 317 So.2d 892, 895 (Miss.1975).

 Nevertheless, these decisions do not compel a conclusion contrary to that reached by the district court. In *Geoghe-*

*gan, supra,* the adverse possessor did not have color of title; in *Woodall, supra,* the adverse possessor had not attempted to have the property assessed to him. Payment of taxes is but one incident of property ownership, and whether an adverse possessor has paid property taxes on the land in controversy is not dispositive of his claim. *See Leavenworth v. Reeves,* 106 Miss. 722, 729, 64 So. 660, 663 (1914). Although the record is ambiguous as to whether the Houstons have actually paid the property taxes due on the island accretions in controversy here, it is clear that they increased the acreage assessments in an attempt to include the accretions that have enlarged Stack Island. Taken together with the other undisputed proprietary acts and the fact that they asserted their claim under color of title, that effort is sufficient to satisfy the conditions established under Miss.Code Ann. § 15–1–13.

 Finally, Gypsum contends that the Houstons have attempted to establish title by adverse possession relying upon acts that are insufficiently open and notorious to bring home the presence of an adverse claim so that it could take the steps necessary to protect itself. It points out that the annual flooding of the island washed away any evidence of Houston's planting sprigs or posting and that evidence of grazing would not alert it to the fact that another person was claiming title to the land. Of course, a furtive, hidden, or concealed use of the property at odd times is not the kind of exercise of dominion or control that characterizes the use and possession of a reasonable owner in the enjoyment of his property. *See Berry v. Houston,* 195 So.2d 515, 518 (Miss.1967). What makes the determination so close in a case like the present one is that reasonable acts of proprietorship are such as would leave little evidence to put the true owner on notice of an adverse claim. The record proof obviously convinced the district court that the Houstons' acts were sufficiently open and notorious to bring home to Gypsum the adversity of their claim. Although difficult, the judgment could be affirmed on this ground.

*See Broadus v. Hickman*, 210 Miss. at 885, 50 So.2d at 717 (less notorious and obvious acts required for adverse possession of wild lands).

▮ The difficulty is obviated in this case, however, by the fact that Gypsum had actual notice of the Houstons' adverse claim as long ago as 1957. Houston not only attempted to sell timber from disputed property to Gypsum, he provided Gypsum with a map that outlined all of the property over which he and his sister asserted ownership. Thus, the Houstons' possession falls within the exception to the notoriety requirement announced in *McCaughn v. Young, supra.*

> The underlying principle on which is founded the rule requiring that possession must be open and notorious before it can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession.

85 Miss. at 292, 37 So. at 842. Where, as here, the adverse possession is actually known to the true owner, it is "equivalent to a possession which is open and notorious and adverse." *Id.*, 37 So. at 842 (citations omitted). The Houstons have met the notoriety requirement.

Accordingly, having satisfied all the essential elements for adverse possession under Miss.Code Ann. § 15–1–13, the Houstons are entitled to recover the value of the timber cut by Gypsum and to quiet title to all the disputed property. The judgment of the district court is

AFFIRMED.